## O'BRYANT v. STATES S. S. CO. *

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

No. 5920.

C. H. Fish, of San Francisco, Cal., for appellant.

Erskine Wood, of Portland, Or., and McCutchen, Olney, Mannon & Greene, of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. ■ Appellant brought this suit mainly for the purpose of recovering damages on account of personal injuries sustained by him about 10 o'clock at night on October 4, 1928, at which time he held the position of second assistant engineer on the steamship Pennsylvania, then 3 or 4 days out from Hong Kong on her return voyage to San Francisco, after carrying a cargo of lumber from Portland to the Orient. By one of his shipmates he was at that hour discovered lying on the main deck, about 20 or 30 minutes after he had been ordered to the engineers' quarters on the main deck, from the men's quarters aft on the lower deck, where he was, admittedly in defiance of express orders, and where, some of the witnesses testified, he was drinking and in an intoxicated condition. When so found, there were wounds and bruises upon his head and other parts of his body, and he was apparently in a semiconscious state. He testified that in obedience to the orders of the master he went to his room, and, after sitting there a short time, he recalled that he had some clothes he desired to wash. Whereupon he got the clothes with a bucket from the bathroom, and started down a nearby ladder to the lower deck. One of the iron handrails of the ladder, it is conceded, had, at its upper end, been broken loose from the supporting stanchion some time before, and had been temporarily repaired by lashing the loose end, which terminated in a curve, to the stanchion by means of a rope. His testimony is that the ladder was very steep, and for safety he started to make the descent backwards, carrying the bucket in one hand and with the other holding to this repaired rail. As we understand, his contention is that the broken end curved upward and then downward for a short distance, and that ignorantly or inadvertently he laid hold of this section instead of the straight descending portion, and when, as he started to climb down, his hand reached the broken end, he unexpectedly lost support and fell to the lower deck, thus sustaining the injuries of which he complains. He seeks damages upon the ground that, as so maintained, the rail was unsafe, and that by reason thereof the appellee is chargeable with negligence. He accounts for the fact that he was found on the upper deck by explaining that, with difficulty, he crawled back up the ladder, but upon reaching the upper deck he became faint and sick and was able to go no further. As a reason for going to the lower deck, he testified there was no soap on the ship, and he wanted to get some "boiler compound" as a substitute.

The testimony is voluminous, and exhibits many angles, and adequately to analyze or abstract it would extend the opinion beyond reasonable limits. In the main that adduced by the appellee was taken in the form of depositions in advance of the trial and before appellant testified; he himself and, with one

*Rehearing denied January 28, 1930.

306

or two exceptions, his witnesses, testified in open court. In some of its features the testimony on both sides is highly extravagant and incredible. Appellee's theory is that appellant did not fall down the ladder at all, but that, after leaving the men's quarters on the lower deck in compliance with the master's orders, he became engaged in an altercation and a fight with members of the crew and was thus injured. While the direct testimony in support thereof is not altogether convincing, the record leaves no doubt that appellant was greatly disliked by most of his shipmates. In a measure supported by two or three witnesses, he testified that he drank no strong liquor and was never intoxicated or quarrelsome, but the overwhelming weight of the testimony is that, from the time the Pennsylvania first touched at an Asiatic port, up to the time of the injury, more or less habitually he drank vodka and other strong intoxicants, was quarrelsome, indulged in offensive language towards his mates, and was insubordinate. In short, his conduct had been such as to engender an ill will so general as to render an attack or quarrel not unlikely. And in some of its features his explanation of why he was attempting hastily to go to the lower deck prior to the injury is difficult to believe. Moreover, by a fair preponderance, the evidence is against his contention that the broken rail from the curve or bend to the broken end extended downward to such a length that he could have made the mistake of assuming that it was the main or descending part of the rail. Besides, its condition was the same as it had been for a considerable length of time and in that condition it was constantly in use day and night by officers and crew. Appellant knew of its condition and had himself used it in passing from one deck to the other. He would neither admit nor deny that he had so used it, but other witnesses testified to use by him.

Without opinion the lower court found against him generally and dismissed the libel, and, upon a careful consideration of the record, we are constrained to the same conclusion.

■ Appellant further contends that he was wrongfully required to go on duty before he had sufficiently recovered from the injury, and, in the light of what we now know, in all probability a mistake was made in that respect. But there was no physician on board, nor did the master have the information now disclosed by the X-ray. In view of his previous conduct, it was not altogether strange that appellant's protestation of illness and inability to work was received with a measure of skepticism. In so far as appears, the master was not inhumane and cherished no ill will against him. He was *compelled* to work only in the sense that he was given to understand that, if he failed to do so, his pay would cease, and, if he believed the requirement unjust, he could have declined to go on duty and later asserted his right to pay. Upon the whole, we do not find in the incident any actionable wrong.

If, as suggested in the libel, there is anything due appellant for expenses of maintenance and care while he was suffering from the injury, the evidence discloses no basis for a computation or finding or even an intelligent estimate.

■ A penalty of two days' wages for disobedience was imposed upon appellant, and this amount he also seeks to recover, but it is not thought the punishment was unwarranted.

The decree of dismissal will be affirmed.