## SILVA v. LUCKENBACH S. S. CO., Inc.

### No. 599.

District Court, D. Massachusetts.

May 1, 1936.

Phillip Cowin, of Boston, Mass., for plaintiff.

Putnam, Bell Dutch & Santry, of Boston, Mass. (C. F. Dutch and F. Fish, both of Boston, Mass., of counsel), for respondent.

BREWSTER, District Judge.

This libel in personam is brought to recover cure and maintenance and also consequential damages resulting from alleged failure to provide reasonable medical care and treatment for injuries received by the libelant on the S. S. Julia Luckenbach. The libelant shipped as oiler on the vessel on a voyage to the Pacific Coast. On June 20, 1933, while the Julia Luckenbach was in the harbor of Mobile, Ala., the libelant, in the performance of his duties, suffered a severe back strain. It is not claimed that the injury was caused by any negligence on the part of the vessel or those in charge of her.

Two questions are presented: (1) Whether the vessel can be charged with neglect to provide proper treatment after the injury; and (2) whether the libelant is entitled to recover for certain medical expenses incurred by him after he landed at New York.

The facts pertinent to these issues are these:

The libelant's duties were to keep the water in the boilers, to lubricate all moving parts, keep the engine room bilges clear, and to otherwise assist the assistant engineer under whom he worked.

While the vessel was in the harbor at Mobile, libelant was told to assist the assistant engineer John L. Johnson in removing a plate connected with the air pump. While lifting the plate, something snapped in his back, and he experienced great difficulty and pain when he endeavored to straighten up. He told the assistant engineer about the accident and was sent to the mate, who gave him a certificate to the United States Hospital at Mobile.

The libelant went immediately to the hospital and was treated by Dr. C. B. De Forest who, at that time, was in charge of the out-patient department. The doctor

diagnosed his trouble as strained back, and applied a belladonna plaster to the back, and sent the libelant back to the vessel. According to the records of the hospital, libelant only visited it one day, which was the day of the accident, and he was not then completely disabled. Libelant testified that the doctor told him not to work for a long time, and that he (libelant) so advised the engineer. The assistant engineer, on the other hand, testified that all that the libelant said to him was that he was in bad shape and he (Johnson) recommended that if libelant was not totally disabled, it would be better for him to stay on the vessel, and that he would give him easier work to do.

I find that the engineer had no advices from the doctor that the libelant should entirely refrain from working. There was nothing about the nature of his injury that would indicate any such advice. I am not satisfied that the engineer was failing in the performance of the duty owing the libelant when he recommended that he continue to carry on, performing what duties he could under the circumstances. Undoubtedly, in his case, as in the case of any one suffering from sacroiliac strain, any work involving use of muscles or change of position would cause pain. It did not follow that reasonable care necessitated a total abstinence from any work whatever.

Libelant was an experienced seaman, conversant with the duties of the vessel toward injured members of its crew. Compare Willey v. Alaska Packers' Association (C.C.A.) 18 F.(2d) 8.

From Mobile to Seattle, which was reached July 15, 1933, the libelant had experienced pain from his injury, but had not asked for any medical treatment or hospitalization, even though the vessel had called at San Pedro where he could have availed himself of the facilities of a marine hospital, if he so desired. At Seattle he was treated at the hospital on July 15 and July 18, 1933. Here the injury was diagnosed as strain, sacroiliac joints right and left, and the only treatment suggested was "back strapped with adhesive." This was done by the doctor in charge of the out-patient department by strapping libelant's back with adhesive tape.

On the return voyage the vessel called at Portland, San Francisco, and San Pedro, affording opportunities for further adequate treatment if the libelant had so desired, but I find no request was made for such treatment at any of these ports.

The libelant testified that while at Seattle he was told by the engineer that if he was totally disabled he would have to leave the vessel, but that if he could do any work he would advise his staying on and doing what he found he was able to do. I find that after the injury libelant's duties were made as light as possible, and he was not required to do anything which he was not entirely willing to do.

During all of this period he suffered the pain and discomfiture which ordinarily attends sacroiliac trouble, and, according to medical testimony, it might have hastened his recovery if he had wholly abstained from work. The duties which he undertook undoubtedly aggravated the pain. Such results are inevitable, but I cannot find that his labors brought on a recurrence, or in any way jeopardized his chances of recovery. His condition was not so obvious to his superiors that the duty to provide medical treatment required the engineer to direct the libelant to abstain entirely from the performance of duties which were not especially arduous. If absolute rest was prescribed, which was not clear on the evidence, the need of it was not impressed on the engineer or other officers on the vessel. If it had been, I have no reason to think that the officers would have compelled the libelant to work. There was no occasion for compulsion, as there were others in the crew who could have been assigned the duties of an oiler.

My conclusion is that the libelant has failed to establish his burden of showing any negligent failure on the part of the vessel to furnish reasonable care and treatment following his injury, and therefore is not entitled to recover consequential damages. O'Bryant v. States S. S. Co. (C.C.A.) 36 F.(2d) 305; Willey v. Alaska Packers' Ass'n, supra.

In every case of this kind, the decision must turn upon the particular facts and circumstances of the case. Upon the facts, the suit at bar is distinguishable from The Point Fermin (C.C.A.) 70 F.(2d) 602 and The Eva B. Hall (D.C.) 114 F. 755, cited by the libelant.

When the libelant landed at New York on the 15th day of August, 1933, he proceeded to Boston, where he made no request for treatment at the marine hospital here. Neither was he told to apply at the hospital for any treatment he might de-

sire. He elected to consult his family physician, who fitted him out with a sacro-iliac belt which he wore for some time. On December 27, 1933, he went back to work on another vessel as a second assistant engineer, returning in March, 1934.

Upon the advice of his family physician, libelant on March 10, 1934, consulted Dr. Lee, a specialist in bone and joint surgery. This physician prescribed a brace and rest.

The libelant saw Dr. Lee five times between March 3 and October 11, 1934. On January 26, 1934, he was examined by a physician, representing the libelee, who found no spasms or tenderness and no loss or restriction of motion. X-rays showed no fracture or displacement.

The expenses for medical treatment, incurred by the libelant after he left the Julia Luckenbach, were $37 to Dr. Davidson, and $45 to Dr. Lee, or a total of $82, which the libelant contends should be paid by the libelee.

■ Respecting cure and maintenance, libelee concedes liability for maintenance at the rate of $14 a week for at least six weeks. There is no dispute about the rate of $14 per week, but libelant claims to be entitled to maintenance at that rate for a period from August 15, 1933, when he left the vessel, to December 29, 1933, when he returned to work on another vessel, or a period of nineteen weeks.

Since I have found against the libelant on the question of consequential damages, and in view of the fact that his work before the voyage ended may have, to some extent, retarded his recovery, I am inclined to give him the benefit of the doubt respecting the period during which libelee may be held liable for maintenance, and, consequently, I find libelant entitled to recover for maintenance $266 (nineteen weeks at $14).

■ The libelee objects to reimbursing the libelant for his expenses incurred for medical treatment. The ground for the objection is principally due to the fact that the libelant elected to call his family physician instead of applying to the marine hospital for treatment. This is not a case where the libelant, after being requested so to do, refused to go to the hospital. In these circumstances, it seems to be well settled in this Circuit, at least, that his election does not defeat his right to be reimbursed if the expenses were necessary and reason-

able. Stevens v. R. O'Brien Co. (C.C.A.) 62 F.(2d) 632.

■ I find, as to the bill of Dr. Davidson, amounting to $37, that the services rendered by him were necessary and his charges reasonable, and that the libelant is entitled to be reimbursed for this amount.

■ As to the bill presented by Dr. Lee, these services were rendered after the libelant had returned to work, and after the period beyond which he makes any claim for maintenance. I am unable to discover any principle of admiralty law that would obligate this libelee for medical care and treatment that libelant received while he was employed upon another vessel.

In conclusion, therefore, I find that the libelant is entitled to recover the sum of $303, being the total of $266 for maintenance and $37 for medical attention.