88 F.2d 144 (1937)
THE BAYMEAD.
CARROLL
v.
MORAN TOWING & TRANSPORTATION CO., Inc.
No. 8191.
Circuit Court of Appeals, Ninth Circuit.
February 9, 1937.
*145 Nathan Merenbach, of San Francisco, Cal., for appellant.
Frederick W. Dorr and Archie M. Stevenson, both of San Francisco, Cal. (Hengstler, Dorr & Stevenson, of San Francisco, Cal., of counsel), for appellee.
Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.
WILBUR, Circuit Judge.
The appellant, Martin J. Carroll, was an able-bodied seaman, serving aboard the tug Baymead on a trip from New York to San Francisco for which he had enlisted. The ship had been purchased and owned by Sovortorgflot, a corporation organized under the laws of the Union of Soviet Socialist Republics. After such purchase, the tug was registered with the Bureau Veritas Registry, as registered at Vladivostok. In the shipping articles it is stated that the vessel was registered at Vladivostok. During the voyage she flew the flag of the U. S. S. R. The appellee, the Moran Towing & Transportation Company, appeared as claimant. It had entered into a contract with the Amtorg Trading Company, which company was acting as agent for Sovtorgflot, to furnish a crew and to take the vessel from Detroit, Mich., via New York to San Francisco. During a severe storm off the coast of California, the appellant, while descending the ladder into the forecastle, slipped and fell to the forecastle deck. He brought this libel in rem against the Baymead to recover $10,000 for personal injuries received by him and also to recover additional sums for maintenance and cure. It is conceded by the appellant that unless the vessel was unseaworthy in some respect which proximately contributed to the injury, the appellant cannot recover damages for personal injuries. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The Birkenhead (D.C.) 51 F.(2d) 116. The Jones Act (46 U.S.C.A. § 688) does not apply to a suit in rem. Plamals v. S. S. Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827. In order to sustain his claim, he alleges that the vessel was unseaworthy in the following particulars: It is claimed that there should have been a handrail on each side of the ladder instead of only one on the after-side; that the brass covering on the steps of the ladder had been worn so smooth that there was danger of slipping when the steps were wet; that the ladder was too steep so that in descending the ladder while facing away from the steps only the heel of the shoe or boot would rest upon the tread. In addition to these charges of unseaworthiness, certain defects in the vessel's equipment are alleged which resulted, it is claimed, in the steps becoming wet at the time the appellant fell. It *146 is alleged that the weather-door at the head of the steps could not be tightly closed and that water entered through the cracks wetting the steps of the ladder. It is also claimed that certain port holes in the forecastle could not be closed so as to be watertight and that water entered into the forecastle through the port holes and was tracked on the steps of the ladder by the crew of the tug. It is also claimed that the manhole covers were defective so as to allow water to enter. Returning to the charges of unseaworthiness so far as they relate to the weather-door, through which it is claimed the water entered and wet the steps of the ladder, it is claimed that the door could not be tightly closed because some of the dogs were "frozen" and because the rubber gasket which should have tightly sealed the door had become so hard that it did not do so, and that no provision was made for replacing the rubber gaskets in the weather-door while at sea.
In his brief, the appellant claimed that the crew was insufficient in numbers, that the medical supplies were insufficient, and that the electric light bulb in the forecastle which should have illuminated the ladder had been removed. These claims of unseaworthiness were not presented to the trial court and for that reason need not be considered by us. Furthermore, no causal connection is shown between the alleged insufficiency of the crew and the absence of medical supplies and the injury to the appellant.
The evidence in many particulars was conflicting. The trial judge found that the vessel was seaworthy in all respects, that the accident was the result of the heavy and unusual storm, and that neither the tug, nor its officers or crew, were in any way responsible for appellant's fall.
The first question that presents itself for decision arises from the contention of the appellee that inasmuch as the vessel at the time of the injury was owned by Sovortorgflot and was flying the flag of the U. S. S. R., the injured seaman cannot recover from the tug damages arising from its unseaworthiness, or for maintenance and cure, without affirmatively proving that the law of the U. S. S. R. authorizes such recovery. No such proof is offered. It is clear that we cannot assume that the law of the U. S. S. R. relating to rights of seamen is the same as that of this nation, notwithstanding the fact that our courts have jurisdiction to enforce the rights of the seaman as against the vessel where the ship is seized within the jurisdiction of the United States and the libel in rem is instituted in the United States District Court having jurisdiction over the territorial waters in which the vessel was seized. Cuba Railroad Company v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, 38 L.R.A.(N.S.) 40; Bonsalem v. Bryon S. S. Co. (C.C.A.) 50 F.(2d) 114; Commissioner of Internal Revenue v. Hyde (C.C. A.) 82 F.(2d) 174; The Hanna Nielsen (C.C.A.) 273 F. 171. Most of the authorities upon which the appellant relies on this subject are those holding that the federal courts have jurisdiction to enforce the lien of the seaman upon a foreign vessel. The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; The Ester (D.C.) 190 F. 216; The Oriskany (D.C.) 3 F.Supp. 805, 1933 A.M.C. 1103; The Falco (C.C.A.) 20 F.(2d) 362. The appellee does not question the jurisdiction of the District Court in this cause, but contends merely that in the exercise of that jurisdiction it is necessary for the trial court to determine the rights of the seaman under the foreign law applicable to the ship while it is on the high seas. Appellant's contentions that no treaty exists giving the Soviet Consul power to assume "judicial functions" and that no request was made by the Soviet Consul to assume "judicial functions" likewise goes only to the question of the jurisdiction of the District Court.
Appellant contends that appellee is estopped from denying ownership of the Baymead because it claimed the vessel July 13, 1934.
In the Steam-Ship Zodiaz, 5 F. 220, 223 (District Court New York, 1881), it was held that, "the fact that, when a vessel is sued for damages by collision, a person appears and defends as owner, is merely an admission that he is the owner at the time of her arrest, and is no admission that he was the owner at the time of the collision, or in any way responsible personally for the acts or negligence of those in charge of her at the time of the collision."
Appellee is not estopped from showing the ship's nationality at the time of the accident, because it later asserted ownership of the vessel.
The fact that the Moran Towing & Transportation Company had control of the operation of the Baymead on its voyage from New York to San Francisco did *147 not change the nationality of the vessel. Rainey v. New York & P. S. S. Co. (C.C. A.) 216 F. 449, L.R.A.1916A, 1149; Manning v. International Mercantile Marine Co. (C.C.A). 212 F. 933.
We see no escape from the position taken by the appellee that the appellant has failed to make out a case to enforce a maritime lien by reason of his failure to prove that he is entitled to such a lien under the law of the U. S. S. R.
Assuming, however, that we are in error in our conclusion that the law of the U. S. S. R. controls the rights of the seaman under the circumstances of this case and assuming that appellant is entitled to maintenance and cure, and for redress for personal injuries received by him if he can establish that they were proximately caused by the unseaworthiness of the vessel, we address ourselves to these questions.
The testimony shows that at the time of the accident the tug was encountering very heavy weather and pitching and rolling violently so that it was difficult for the crew to keep their footing; that it was compelled to head into the wind; and that it was taking heavy green seas over the bow, estimated by the witnesses as from six to ten feet deep. Appellant testified that the tug was awash from stem to stern. Frank R. Fuller, serving as Second Assistant Engineer on the tug at the time of the accident, testified that the deck was completely under water at all times from the time the tug left the canal; that the members of the crew got thoroughly drenched whenever they were on watch and from watch would go directly to the forecastle (through the dining saloon) as soon as they could do so without danger of being washed overboard by the heavy seas. It is clear that the steps of the ladder would be wet by water dripping from the clothing of these seamen and by their damp foot gear.
We conclude from the evidence that the severe weather was the cause of the accident. The burden was upon appellant to show that the water from the weather door, portholes, or manholes, which may have been added to that tracked in by the crew from the deck proximately caused the accident. From the evidence, we are satisfied that appellant did not meet this burden.
With reference to the handrail on the ladder, it is sufficient to say that the ship-owner is not obliged to furnish the best possible accommodations or equipment for his crew; that no statute requires two handrails, and that the testimony supports the conclusion of the trial judge that the absence of one handrail did not make the vessel unseaworthy in that regard. Furthermore, an inspection of the photograph of the ladder and its surroundings in evidence shows that on the side opposite the handrail there is a vertical stanchion which could be used as a hand hold on that side.
With reference to the ladder being too nearly vertical so that the steps provided an insecure foothold to the seamen going down the ladder facing away from the steps, it is sufficient to say that the position of the ladder was well known to the appellant who used it daily and that if in his judgment there was insufficient foothold provided by the steps while facing forward, there is no good reason he should not have turned about and faced the ladder, thus getting a more perfect foothold in order to come down the ladder.
There remains to be considered the contention of the appellant that the brass covering on the steps had been worn so smooth as to be slippery and dangerous. The testimony is conflicting upon that question. The photograph of the steps, in evidence, shows that the brass covering had the familiar diamond shaped projections used in treads cut or stamped in it. That these projections were worn to some extent is clear from the photograph which shows the surface of the two lower steps, but not of the upper ones. The appellant fell from the upper steps and as the evidence is conflicting as to the surface of these steps we see no reason to disregard the finding of the trial judge with relation thereto, although they were no doubt worn to some extent as the lower steps were. We conclude then that even were the law of the U. S. S. R. the same as that of the United States, or if the latter controls, that the appellant is not entitled to recover for personal injuries upon the ground of the unseaworthiness of the ship but that his right to recover is limited to maintenance and cure.
With reference to the question of maintenance and cure, the evidence shows that the injury occurred on the 7th day of July, 1934; that appellant performed his regular duties after the accident except that he did not continue to "hoist the ashes." The tug arrived in San Francisco *148 July 9, 1934. Appellant entered the Marine Hospital July 17, 1934, as an "outpatient" and July 20, 1934, as an "inpatient." He was discharged from the hospital September 11, 1934, as "symptomless." Appellant claims that he should be entitled to maintenance and cure at the rate of $2 per day for the eleven days prior to the time he entered the hospital as an "in-patient" and for forty days after leaving the hospital.
In this connection, it should be stated that the trial judge ascribed the permanent injury, if any, suffered by the appellant, to a fracture of his skull which he had received prior to the time he slipped on board the Baymead. Consequently the trial court found that the injuries received by appellant from the fall in question were comparatively trivial. In the absence of any showing on the part of the appellant that he had medical treatment and care after he was discharged from the hospital he is not entitled to recover for that period, nor is he entitled to recover for maintenance and cure during the period before he went to the hospital for the record does not show that any money was expended by him for that purpose or that any liability was incurred therefor. The Balsa (C.C. A.) 10 F.(2d) 408; The James E. Ferris (D.C.) 1 F.Supp. 1018, 1022; The Magdapur (D.C.) 3 F.Supp. 971; Fleischman v. U. S. (D.C.) 7 F.Supp. 373, 376; 56 C.J. 1078, § 624.
Decree affirmed.
DENMAN, Circuit Judge, concurring in part and dissenting in part:
I concur in the holding that there is no presumption that the law of the Union of Soviet Socialist Republics with regard to the relationship of the sailor to his ship is the same as that of the United States and that it is the law of the U. S. S. R., here unproved, that governs this case, and hence concur in the affirmance.
I cannot agree that the stairway with its worn and dangerous brass-bound steps was seaworthy equipment. It would not be regarded as a safe appliance in a manufacturing plant on land. For a tossing boat in a storm the maintenance of such a structure is still more reprehensible. Since mechanical power has been substituted for sail, the old concept of the sailor as an adventurous athlete, taking the highest dangers as the ordinary risk of his employment is gradually disappearing. Its eradication should be hastened by the courts by the application to the steamship of every obligation for safety in equipment required in a modern manufacturing plant  plus much more, the addition being measured by the instability of the seaman's place of work and its exposure to wind or water.