## THE PETTER LASSEN.
### No. 22825–R.

District Court, N. D. California, S. D.
Oct. 27, 1939.

S. T. Hogevoll and Fred L. Berry, both of San Francisco, Cal., for plaintiff.

Lillick, Olson, Levy & Geary, of San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is a libel brought by a Norwegian seaman against the Danish vessel Petter Lassen, owned by respondent and claimant,

a Danish corporation, and chartered by the United Fruit Company under time charter. Libelant, employed as a fireman on the Petter Lassen under written articles of employment which expressly provided for application of the Danish law, suffered a paralytic stroke while enroute to Puerto Armuelles, Panama, from San Francisco, California. The stroke occurred on June 15, 1938, five days after libelant's vessel left San Francisco, and some 36 hours after he had worked in the engine room, from which he had been excused after undergoing an attack of fireman's cramp on June 14th. Libelant received proper care for his fireman's cramp, and was then permitted to recuperate on the deck of his ship. While resting on the deck, libelant suffered his stroke. Thereupon the Chief Officer of the Petter Lassen took charge of the case, gave libelant emergency treatment, and sent a wireless to the Marine Hospital in San Francisco, asking for information concerning libelant's condition, and advice as to immediate medication. The Marine Hospital wired back directions, which were thereafter followed until the end of the voyage at Puerto Armuelles four, days later. The Chief Officer supervised all medical treatment of libelant. At Puerto Armuelles libelant was hospitalized for a period of three months, after which he was returned to San Francisco and placed in the hands of the Norwegian Consul. Libelant received his full wages for the voyage plus seven days' additional pay.

At the hospital in Puerto Armuelles it was discovered that libelant was the victim of syphilis. The effect of this venereal disease in bringing about the paralytic stroke is not known, but the testimony at the trial indicated that libelant's syphilis was a precipitating cause at the very least. Libelant, who is now suing for damages, wages and maintenance and cure, contends that the extreme heat of the engine room caused the stroke; that a duty arose on the part of respondent not only to care for libelant but also to sail to the nearest Mexican port where a doctor and a hospital might be found; that the duty of maintenance and cure, undertaken at Puerto Armuelles, continued in San Francisco; that by reason of respondent's neglect of duty, libelant suffered prolongation of his syphilis and his paralysis. In addition to asking for an award of damages for respondent's failure to provide immediate professional medical attention after the stroke, and satisfactory hospital treatment in San Francisco, libelant is demanding reasonable maintenance and cure plus additional wages.

Respondent denies all liability. In its answer to the libel, it asserts that libelant's stroke was caused solely by his syphilis and not by the heat; that the continuance of the voyage to Puerto Armuelles after the stroke was the wisest course to pursue on behalf of libelant; that maintenance and cure and wages have been paid libelant in excess of the minimum requirements of Danish law, which, it is alleged, applies in the case before the court.

■ The fact that the Petter Lassen was chartered by an American corporation does not affect its Danish nationality. The law of the flag of the vessel on which the accident occurs upon the high seas controls the rights and liabilities of the parties. The Baymead, 1937, 9 Cir., 88 F.2d 144; Rainey v. New York & P. S. S. Co., 1914, 9 Cir., 216 F. 449, L.R.A.1916 A, 1149. Since libelant's stroke took place on the high seas, the Danish law applies in the case at bar.

■ The burden of proof as to the Danish law rests upon the libelant, who must establish it as a necessary part of his case. The Hanna Nielsen, 1921, 2 Cir., 273 F. 171; Bonsalem v. Bryon, 1931, 2 Cir., 50 F.2d 114; The Baymead, supra. This, the libelant has failed to do. However, even if the Danish law is applied to the claims of libelant, we find that respondent has complied with the maintenance and cure provisions of the Seaman's Act of 1923, Section 28, which reads: "If a seaman is sick at the time of the termination of his service he is entitled to medical attendance for a period of six weeks at the owner's expense." Libelant was hospitalized for three months in Puerto Armuelles.

■ Respondent has also met the Danish requirements for wages, as may be seen by examining Sections 13 and 32 of the Seaman's Act of 1923, which respectively read:

"If nothing else has been agreed upon in regard to the duration of the employment, either party shall be entitled to give notice before leaving in any harbor entered by the ship for unloading purposes. * * *

"The period of notice is * * * seven days for the subordinate crew."

"If a seaman, on account of sickness, injury, or hurt, is prevented for some considerable time from performing his duty, or if he is suffering from an illness which is dangerous to those on board, the master can dismiss him. Besides full wages until the time of leaving, a seaman is, in such a case, * * * entitled to seven days' extra wages, after leaving. * * *"

In case of a dispute as to wages, Section 43 provides for a settlement by the Danish Consul. No application has been made to the Consul by libelant, who received full wages up to the time of leaving, plus seven days' extra wages in accordance with the law set out in Section 32, above.

██ In view of the fact that respondent furnished libelant with maintenance and cure as required by Danish law, it cannot be held that libelant is entitled to damages by reason of respondent's failure to continue libelant's hospitalization in San Francisco. Thus, the sole remaining basis for libelant's suit rests on the allegations of negligence on the part of respondent in failing to carry libelant to the nearest Mexican port after the stroke occurred, instead of continuing the voyage to Puerto Armuelles, which was four days away.

At this point it should be repeated that the Danish law applies to the alleged tort committed by respondent on the high seas; that the burden of proving the Danish law falls on libelant; and that libelant has failed to set forth the applicable law.

Libelant, in asserting his damage claim for failure to furnish proper maintenance and cure immediately upon the stroke being suffered, relies on "general maritime law", and cites Cortes, Administrator v. Baltimore Insular Line, Inc., 1932, 287 U.S. 367, 370, 53 S.Ct. 173, 77 L.Ed. 368. Even accepting libelant's interpretation of the so-called "general maritime law", the court must be shown that respondent was guilty of negligence in failing to provide proper care for libelant. In its answer, respondent denies any negligence in caring for libelant. At the trial respondent proved that facilities at the nearest harbors were far from adequate and that health conditions in most of the coastal towns were poor. Respondent also proved that movement of libelant was unwise; that most of the available ports could not permit a boat of the draft of respondent's to dock; and that in order to carry libelant to a hospital, transshipment in a lighter would have been necessary, altho such movement would have been contrary to instructions from the Marine Hospital doctor. Furthermore, respondent showed that libelant received excellent attention on board the Petter Lassen, and that assistance from a doctor would have made no difference in the method of treatment or in the rate of recovery. This proof was not satisfactorily refuted by libelant, who therefore is not entitled to recover damages. See Baker v. Waterman, 1939, 5 Cir., 103 F.2d, 987.

Respondent has submitted other grounds by way of defense, but in view of the fact that the above mentioned laws preclude libelant from recovering, respondent's remaining grounds will not be discussed. The libel is dismissed. Each party will bear its own costs.