ROBINSON v. SWAYNE & HOYT, Limited,
et al.

No. 851–Y.

District Court, S. D. California, Central
Division.

May 17, 1940.

Herbert R. Lande, of San Pedro, Cal.,
for libelant.

Lasher B. Gallagher, of Los Angeles,
Cal., for respondents.

YANKWICH, District Judge.

Clarence Robinson, the libelant, a minor, was employed by the respondents at Los Angeles, California, as an ordinary sea-man on board the ship "Point Clear" at a wage of $55 per month, for a voyage to the East Coast and return. When he signed the articles, he was physically fit.

While in the service of the ship, he became ill. He was operated on for acute appendicitis, at the United States Marine Hospital at Tampa, Florida, which he entered on December 2, 1939, after leaving the ship at that port. He left the hospital on December 19, 1939, and traveled back to his port of shipment,—Los Angeles.

Failing to recover fully, he entered the Marine Hospital at San Francisco, from January 16, 1940, to January 25, 1940, for treatment.

The libelant claims that he contracted malaria while on the ship. His testimony and that of his witnesses show chills and fever and other symptoms of malaria. He was actually given quinine treatments by the United States Public Health Service at Los Angeles, although the Marine Hospital at San Francisco did not find bacteriological evidence of malaria, and finally reached the conclusion that he did not suffer from it.

In his libel, filed through his mother, as his guardian ad litem, he seeks to recover

his wages to the end of the voyage and maintenance from December 19, 1939, to January 16, 1940, and from January 25, 1940, to date.

The respondents have paid him the sum of $158.81.

The medical testimony does show that no bacteriological evidence of malaria was found. The fact remains, however, that, as late as March 15, 1940, the United States Public Health Service at Los Angeles administered malarial treatment.

Ultimately, it is immaterial whether he *did* or *did not* suffer from malaria.

■ We have here the case of a seaman who contracted acute appendicitis, while in the service of his ship. And whether his subsequent sickness be called malaria or not, it is evidently connected with the illness incurred while in that service. The seaman was unable to work in the interim, after his discharge from the hospital, and no intervening cause for his post-operative indisposition, as an independent factor, unconnected with the period of his employment by the respondents, exists. See Erotokritos v. Velousios, 1939, 5 Cir., 104 F.2d 761.

I am, therefore, of the view that he is entitled to recover his wages to the end of his voyage,—January 29, 1940,—and cure to March 15, 1940.

As his medical treatments were furnished by the Public Health Service, no medical expenses were incurred, other than the incidental expense of transportation to the Marine Hospital at San Francisco.

However, the question of maintenance raises an interesting problem.

The libelant is a minor. From the day of his return from the hospital at Tampa, he has resided with his parents.

The respondents admitted, in their answer to the libel, that the sum of two dollars per day is *a reasonable sum for maintenance.*

■ But the libelant did not allege and the respondents did not admit that that or any other sum was actually spent for any period. And *no* proof was offered by the libelant, at the trial, that he expended any money or obligated himself for the purpose. Under the circumstances, we must determine whether, in the absence of proof of expenditures or liability incurred for maintenance, the seaman can recover its reasonable value. I am of the view that he cannot.

■ The seaman's right to recover for illness contracted while in the service of the ship *is not* in the nature of compensation for damages, as when he sues for injuries under the Jones Act, 46 U.S.C.A. § 688, or as is the case in ordinary employments. It arises from his contract of employment, and exists independent of the negligence or the fault of the owner of the ship. And the duty of the owner extends only to the cure of the seaman, *at his sole expense,* and the payment of his wages for the length of the voyage. See The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Calmar S. S. Corp. v. Taylor, 1937, 303 U.S. 525, 58 S.Ct. 651, 83 L.Ed. 993; Smith v. Lykes Brothers—Ripley S. S. Co., 1939, 5 Cir., 105 F.2d 604. The expenses of the cure are those actually incurred by him, provided he cannot obtain free treatment from the United States Public Health Service. See The Balsa, 3 Cir., 1926, 10 F.2d 408; Marshall v. International Mercantile Marine Co., 2 Cir., 1930, 39 F.2d 551. Maintenance, while being cured, takes the place of the sailor's sustenance on the ship, which goes with his employment.

Maintenance when ill is a part of the seaman's cure.

Both are limited "to the expense of such maintenance and cure as is not at the disposal of the seaman through recourse to that service [Marine Hospital service]." Calmar S. S. Corp. v. Taylor, supra, 303 U.S. at page 531, 58 S.Ct. at page 654, 82 L.Ed. 993.

Significantly, the opinion just referred to continues:

"Furthermore, a duty imposed to safeguard the seaman from the danger of illness without succor, and to safeguard him, in case of illness, against the consequences of his improvidence, would hardly be performed by the payment of a lump sum to cover the cost of medical attendance during life.

"The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts *as may be needful in the immediate future for the maintenance and cure* of a kind and for a period which can be definitely ascertained." Calmar S. S.

Corp. v. Taylor, supra 303 U.S. at pages 531-532, 58 S.Ct. at page 654, 82 L.Ed. 993. (Italics added.)

 "Maintenance" and "cure" are spoken of conjunctively in the cases. Recovery for both is not by way of a general award of a lump sum, but on the basis of actual cost or, where the award is made before the cure is completed, of a reasonable estimate of future cost.

No reason exists for allowing recovery for maintenance beyond actual cost when recovery for cure is so limited. The Balsa, 1926, 3 Cir., 10 F.2d 408; Marshall v. International Mercantile Marine Co., 2 Cir., 1930, 39 F.2d 551; Stewart v. United States, D.C.La., 1928, 25 F.2d 869.

Both arise out of the same duty, which, as said in Calmar S. S. Corp. v. Taylor, supra, 303 U.S. at page 531, 58 S.Ct. at page 654, 82 L.Ed. 993, "does not extend beyond the seaman's need."

This need is measured by what is actually necessary and what the seaman actually spends or obligates himself for.

To allow the reasonable value of maintenance without a showing of its actual incurrence would broaden the duty of a ship owner. It would make him liable *as for damages*. His liability is not of this character.

These views, which flow from the nature of the duty owed to the seaman, are also supported by the following cases: The Baymead, 9 Cir., 1937, 88 F.2d 144; 1937 A.M.C. 207; Field v. Waterman S. S. Corp., 5 Cir., 1939, 104 F.2d 849; Otto Hegsted v. Standard Transportation Co., D.C. N.Y., 1934, 1934 A.M.C. 1005; Otto Hegsted v. Standard Transportation Co., D.C. N.Y., 1934, 1934 A.M.C. 190; West Irmo, D.C. N.Y., 1935, 1936 A.M.C. 614.

It follows that, absent any proof that the libelant here actually paid anything for maintenance or obligated himself to such payment, he is not entitled to recover.

The recovery will be as follows:

Wages, $104; railroad fare from Tampa, Florida, to Los Angeles, California, $70.19; meals, $8.90; railroad fare from Los Angeles to Marine Hospital, San Francisco, $12.

From this should be deducted the amount received,—$158.81.

Decree will, therefore, be entered for the libelant in the sum of $36.18 and costs.

Findings and decree to be prepared by the libelant under local Rule 8.