**BALLARD v. ALCOA S. S. CO., Inc.**
**Adm. No. 2524.**

United States District Court
S. D. Alabama, S. D.
June 16, 1954.

Albert S. Gaston, Mobile, Ala., for libelant.

John H. Tappan, of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondent.

THOMAS, District Judge.

This cause was submitted on the libel, the answer, and the stipulation. "Libelant's only claim is for his maintenance for the period during which he was imprisoned in jail." (Paragraph 7 of Stipulation.)

Findings of Fact

Libelant was serving aboard respondent's S. S. Alcoa Polaris on October 19, 1953, when he was found unfit for duty by the United States Public Health Service at Mobile and medically discharged from the vessel in that port. He was found fit to return to duty on November 20, 1953.

On November 8, 1953, libelant was imprisoned in jail where he remained

until November 19, 1953. According to the stipulation, during the time he was jailed, he "* * * was provided jail fare and jail accommodations without incurring any expense or obligation therefor."

Respondent has paid libelant in full for his maintenance for the entire period of his disability except for the time libelant was in jail. Libelant claims maintenance for that period; respondent denies the obligation. This is the sole issue in the cause.

### Conclusions of Law

I find no authority directly in point of this dispute. Libelant insists that maintenance involves something more than jail accommodations afforded a prisoner; that though jail fare may afford subsistence from a scientific point of view, it can hardly be considered in most instances as palatable. Although there is nothing in the record beyond that which I have noted to disclose the nature of libelant's situation, I think it not unreasonable to conclude that libelant would have, had he had the choice, found fare somewhat more delectable than was his lot under the circumstances.

In the early history of the maritime law of this country, Mr. Justice Story in Harden v. Gordon, 11 Fed.Cas. page 480, No. 6047, and Reed v. Canfield, 20 Fed.Cas. page 426, 429, No. 11,641, discussed at length the obligation of maintenance. In the Harden case, concerned essentially with the claim for expenses occasioned by the sickness of a seaman in a foreign port in the course of a voyage of the brig Enterprise, Justice Story notes that a sick seaman, while on board, is entitled to receive suitable sustenance and attendance during his illness and he is entitled to a similar allowance when he is put ashore. The justice cites in support of this the 7th article of the Laws of Oleron, the 19th article of the Laws of Wisbuy, and the 45th article of the Hanseatic Ordinance. In the Reed case, Justice Story further notes that the seaman is to be cured at the expense of the ship. "But so far, and so far only, as expenses are incurred in the cure, whether they are of a medical or other nature, for diet, lodging, nursing, or other assistance, they are a charge on, and to be borne by, the ship." * * Owners "are liable only for expenses necessarily incurred for the cure; * * *."

These cases seem to be the foundation upon which rests the doctrine of maintenance and cure in this country; it is clear from them that they in turn are rested upon ancient maritime codes under which the same obligation existed.

It is further to be noted that, in essence, maintenance amounts to subsistence for the seaman while he is being cured; one is necessary that the other be accomplished.

In Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 653, 82 L.Ed. 993, the court, in referring to the reasons underlying the rule of maintenance and cure, summarized Mr. Justice Story's enumeration of them in the Harden case, supra, as follows: "The protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service." See also The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

Judge Hough in, The Bouker No. 2, 2 Cir., 241 F. 831, 835, says: "The meaning of the phrase 'maintenance and cure' is plain. By the custom of the sea the hiring of sailors has for centuries included food and lodging at the expense of the ship. This is their maintenance, and the origin of the word indicates the kind and to a certain extent the quantum of assistance due the sailor from his ship."

From the foregoing I believe it clear that it has long been the doctrine

that the ship, during the time the seaman is recovering from his illness or wound, must take care of the expenses of cure and maintenance incurred by a seaman who has fallen ill or has been injured in the service of the ship.

However, here we are faced with the situation of a seaman claiming maintenance for which he has incurred no expense nor obligation. Judge Yankwich in, The Point Clear, Robinson v. Swayne & Hoyt, D.C., 33 F.Supp. 93, 95, 1940 A.M.C. 830, gave careful consideration to the situation of a seaman claiming maintenance where there was no proof of expenditure or obligation incurred for such maintenance. Medical attention was provided to the seaman by the Public Health Service, and thus no medical expenses were incurred. The respondents in the case admitted in their answer that the sum of $2 a day was a reasonable sum for maintenance; but the libel did not allege, nor did respondents admit, that any sum was actually spent for maintenance; no proof was offered by the libelant that he expended any money or obligated himself for it. He resided with his parents during the period involved.

Judge Yankwich notes that a seaman's right to recover for illness contracted while in the service of a ship *is not* in the nature of compensation for damages, but arises from his contract of employment and exists independently of the negligence or fault of the ship owner; that maintenance when ill is a part of the seaman's cure; that "maintenance" and "cure" are spoken of conjunctively in the cases, and that recovery for both is not by way of a general award of a lump sum, but on the basis of actual cost; that both of these rights arise out of the same duty, which, as said in the Calmar case, supra, " 'does not extend beyond the seaman's need'." Continuing, Judge Yankwich said: "This need is measured by what is actually necessary and what the seaman actually spends or obligates himself for.

"To allow the reasonable value of maintenance without a showing of its actual incurrence would broaden the duty of a ship owner. It would make him liable *as for damages*. His liability is not of this character.

\* \* \* \* \* \*

"It follows that, absent any proof that the libelant here actually paid anything for maintenance or obligated himself to such payment, he is not entitled to recover."

■ The courts are consistent in following this doctrine. In essence it is: A seaman may not recover for maintenance (or cure) without proof of expenses incurred or obligation created for such maintenance. The Balsa, 3 Cir., 10 F.2d 408; The Baymead, 9 Cir., 88 F.2d 144; Field v. Waterman S. S. Corporation, 5 Cir., 104 F.2d 849, 1939 A.M.C. 1555; United States v. Johnson, 9 Cir., 160 F.2d 789, 1947 A.M.C. 765, affirmed on the question of maintenance by the Supreme Court, 333 U.S. 46, 50, 68 S.Ct. 391, 92 L.Ed. 468, 1948 A.M.C. 218; The James E. Ferris, D.C., 1 F.Supp. 1018, 1022, 1932 A.M.C. 1410.

■ Libelant insists his fare was not palatable. Though the courts have been prompt to enforce the shipowner's obligation for maintenance, if the fare is adequate to maintain the seaman during cure, the obligation has been met. In The Santa Barbara, 2 Cir., 263 F. 369, 370, the seaman refused to stay at the Marine Hospital in New York. The first meal offered him brought forth the comment: " 'That ain't no meal for a man with a broken knee who has got a good stomach; I want to eat.' " Thereupon the seaman left for his home. Judge Hough, for the Second Circuit Court, concludes that the seaman's conduct in leaving the Marine Hospital left the court without a basis for an allowance in his favor.

It is to be noted that this conclusion also is in accord with the general authorities; that is, a refusal of the Marine Hospital care, treatment and lodging, when offered, deprives the seaman of his right to recover for maintenance and cure. The Santa Barbara, su-

pra; The Point Clear, supra. Accordingly, I am of the opinion that respondent has fulfilled its obligations and the libel should be dismissed.

A decree will be entered in accordance herewith.