**Leandros LIVANOS, Plaintiff-Appellee,**

v.

**NATIONAL BULK CARRIERS, Inc.,
Defendant-Appellant.**

**No. 17, Docket 24565.**

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1957.

Decided Oct. 24, 1957.

Frederick H. Cunningham, New York City, for defendant-appellant.

Herbert Lebovici, of Lebovici & Safir, New York City, for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

CLARK, Chief Judge.

Plaintiff, Livanos, a Greek national domiciled in France, sues under the Jones Act, 46 U.S.C. § 688, for his injuries sustained on November 3, 1952, while serving as a wiper aboard defendant's tanker "Wagon Box." He also seeks maintenance and cure. The accident occurred while the tanker was at sea and when he and another seaman named Law were ordered by the ship's first assistant engineer to remove a defective section of an overhead pipe located near the after end of the ship. The section, approximately 12 feet long, weighed about 120 pounds and was joined to the rest of the pipe by flanges secured by nuts and bolts. After Livanos and Law removed the nuts and bolts they were still unable to free the section because the joints were frozen with rust. They tried to shake the section loose, but were unsuccessful. While they were shaking the section the ship's engineer appeared and began talking with Law. Thereupon Law told Livanos that he would hold the center part of the section while Livanos tried to disengage his end. Law, facing Livanos, advanced to the center of the section and held the pipe with both hands over his head. Livanos then told Law to look out because he was going to turn around and apply pressure from another angle. Law nodded in response and continued to speak with the chief engineer. As Livanos turned, the pipe fell, striking him on the head and causing injuries which were later diagnosed as post concussion syndrome, cochlear lesion of the left ear, and damage to the left pupillary sphincter resulting in headaches, dizziness, and impairment of hearing and vision. The chief engineer was present during this whole period and was actually talking to Law when the accident occurred.

Livanos was treated aboard ship. He was discharged when it docked at San Francisco on December 7, 1952. From December 16, 1952, to January 2, 1953, he received outpatient treatment from the United States Public Health Service at San Pedro, California. He then came to New York City, where, after treatment as an outpatient at a Marine Hospital, he was admitted to Kings County Hospital on February 20, 1953. He remained there until March 12, when he was discharged and told to go home and rest. He left the United States for France on March 15, 1953, the day his immigration permit expired, and received treatment there for his injuries until some time in 1956. Due to these injuries appellee did not go back to work until August 9, 1954.

In this action the negligence count, tried to the jury, resulted in a verdict and judgment of $10,000 for the plaintiff.[1] The court awarded him an additional $2,136 for maintenance and cure. The court had denied the usual motions for dismissal and to set aside the verdict. This appeal followed.

■ Defendant urges that Livanos failed to prove its negligence or that such negligence was the cause of the accident. There was, however, sufficient evidence for the jury to find that the pipe fell because Law negligently failed to support it properly or was distracted by the chief engineer's conversation. In addition, we find sufficient evidence for the jury to have concluded that the chief engineer, who was present prior to and during the accident, failed properly to supervise the removal of the pipe, or that the first assistant engineer was negligent in failing to issue proper instructions or assign an adequate number of seamen to perform the job safely. The test properly applicable here was that stated in Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493, and reiterated in Ferguson v. Moore-McCormack Lines,

---

1. The trial court also disposed of a claim of unseaworthiness on the ground of absence of evidence to show that the unseaworthy condition of the pipe caused the injury. Plaintiff withdrew a second cause of action for damages due to allegedly improper medical treatment aboard ship.

352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L. Ed.2d 511, as follows:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

Defendant also maintains that the court erred in awarding Livanos $2,136 for maintenance and cure. It does not contest $806 of this award, the agreed amount due Livanos before his departure from the United States on March 15, 1953. It contends, however, that the award for maintenance while in France and for medical expenses incurred there was unjustified.[2]

■ Livanos testified that upon his return to France he was unable to work because of the injuries sustained in the accident. He also testified that he was treated at various French institutions for these injuries, and that when he applied for employment in Bordeaux as a trolley car conductor in April 1954 his application was rejected because he was not physically fit due to these injuries. He further testified as to his medical and living expenses in France during this period of unemployment and to his loss of wages due to the accident. Defendant offered no contradictory proof. The trial court obviously believed the plaintiff's testimony, and we see no reason to overturn its conclusion.[3] Defendant cites a number of cases which it contends require denial of this maintenance and cure award for plaintiff's failure to introduce supporting proof that payments were actually made.[4] These cases, however, involve a failure of any proof that money was expended for medical or living expenses while the respective plaintiffs were out of work because of injuries sustained aboard ship. Here Livanos' own testimony, if believed, was sufficient proof of these payments.

■ Defendant also contends that as Livanos voluntarily left the United States, where he could have received free medical attention, he is not justified in recovering payments made by him for this purpose after March 15, 1953. We are convinced, as was the trial court, that Livanos left the United States involuntarily after his immigration permit expired and therefore that free service at a Marine Hospital was no longer available. He may therefore recover those medical expenses which he actually paid or for which he incurred an obligation. The Balsa, 3 Cir., 10 F.2d 408.

Judgment affirmed.

---

2. Maintenance was calculated according to the French rate of $89 per month, rather than the American rate of $240 per month. The parties agreed that maintenance at the French rate came to $1,464. The court found that Livanos' medical expenses in France were $244. These sums, plus the agreed $806 for maintenance prior to his departure from the United States, total $2,514. But the court's actual award was $2,136.

3. In addition, testimony of doctors who examined Livanos in 1954 (for purposes of this suit) showed that his disability was much greater then than at the time of trial. The court below believed that this testimony corroborated his assertions that he was unable to work because of his injuries.

4. Robinson v. Swayne & Hoyt, Ltd., D.C. S.D.Cal., 33 F.Supp. 93; Benton v. United Towing Co., D.C.N.D.Cal., 120 F.Supp. 638, affirmed 9 Cir., 224 F.2d 558; Ballard v. Alcoa S. S. Co., D.C.S.D. Ala., 122 F.Supp. 10.