**Jerry HURTE, Libelant,**

v.

**SOCONY–MOBIL OIL COMPANY, Inc.,
Respondent.**

**No. 60 A 361(2).**

United States District Court
E. D. Missouri, E. D.

June 25, 1963.

886

Glennon T. Moran and Godfrey P. Padberg, St. Louis, Mo., for libelant.

John P. Emde, Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, Mo., for respondent.

MEREDITH, District Judge.

This cause was tried before the Court on March 20, 1963, and the Court having heard all the testimony, the evidence and being fully advised by the briefs of all parties, makes the following findings of facts and conclusions of law:

Libelant is 36 years of age and has a fourth grade education. Except for two enlistments of approximately one year

each in the United States Navy, he had worked at various jobs, cutting timber, farming, sharecropping, driving a gravel truck, and as a service station attendant. Libelant began working for respondent on May 12, 1959. Immediately prior thereto and at the request of respondent, libelant was given a pre-employment physical examination by Dr. St. John, the respondent company doctor. Dr. St. John found him fit for duty with no ailments.

On June 14, 1959, libelant, then in the employ of the respondent as a seaman on the respondent's vessel "LaCrosse Socony", a vessel operating on navigable streams, the Mississippi and Illinois Rivers, in attempting to tie a barge to a lockwall, fell to the deck of the barge on which he was working.

As a direct result of his fall, libelant injured his back and on June 16, 1959, when the vessel LaCrosse Socony was docked in St. Louis, Missouri, libelant was taken by respondent's agent, A. E. Winholt, to Dr. St. John for examination and treatment.

Dr. St. John found an abrasion about an inch and a quarter in diameter and soft tissue swelling left of the mid-line of the mid-sacrum. Dr. St. John provided Hurte with tablets and discharged him as fit for further duty.

From June 16, 1959, to July 16, 1959, Hurte had time off with pay in accordance with his working agreement and on July 16, 1959, Hurte returned to duty as a deckhand aboard the LaCrosse Socony. Hurte performed all of his duties as a deckhand aboard the vessel LaCrosse from July 16 to August 11, 1959.

On August 11, 1959, Hurte left the vessel. The testimony was in dispute as to why Hurte left the vessel. Respondent's witnesses testified that Hurte said he was leaving to start a junk yard. Hurte testified that he told Winholt that his back was injured, but that his immediate complaint was that he thought he had appendicitis and wanted to see a doctor. Hurte further testified that Winholt told him he could not let him

have the time off for medical attention and thereupon Hurte left to seek medical attention from his family doctor in Cape Girardeau. We find Hurte's testimony credible and is borne out by subsequent events and communication between Hurte and Winholt. Hurte went to Cape Girardeau, immediately saw his family doctor, who sent him to the hospital at Hayti, Missouri, for x-rays of his back. On August 13 or 14, Hurte wrote Winholt:

"Would you please check this statement and send me a form for the hospital to fill out I have trouble with my back and have got to take xrays of it three this afternoon, and when I took the exam they found three ruptures. I have got them since I started on the boat. I had one to start hurting when I got my back hurt the bottom one. I thought it was my pindicks and got higher. When I found out it was ruptures in stead and it is a good thing I didnet go on the last trip.

"It looks like I am through with lifting or straining until I get three operations. If you need me to come to the company doctor for a exam let me known and I will. Please send me insurance form as I haven't got the money for the exrays. The insurance is paid up to date."

Winholt received this communication on August 17. Hurte's references in this letter to his back injury and to his mistake about his "pindicks" suggests, and this Court so finds, that the matter had been discussed with Winholt at the time Hurte departed on August 11. In response to Hurte's letter, Winholt wrote Hurte asking him to telephone, which Hurte did on August 21, 1959. In this telephone conversation, Winholt told Hurte that the Insurance did not cover his injuries and it was out of the company's hands. This much was clear to Hurte. Winholt also told him to come see Dr. St. John and that there might be forms to fill out. He informed Hurte that he had made an appointment for him to see Dr. St. John on August 24. Hurte

did not keep this appointment with Dr. St. John because he determined there was no point in doing so if, as he understood from the conversation, the "insurance" didn't pay for it. Winholt filled out a form entitling Hurte to medical services at the Public Health Service, but this was never tendered or sent to Hurte. Libelant was not aware that a Public Service Hospital was available to seamen and it was not explained to him. On these facts we conclude and find that an offer of medical treatment was not made to Hurte either at the time he left the ship or from the conversation on the telephone with Winholt.

Subsequent to Hurte's telephone conversation with Winholt, he retained the services of an attorney and agreed to pay him thirty-three and a third percent of any recovery. The attorney for Hurte wrote respondent on November 5, 1959, advising him that he represented libelant. With the consent of Hurte's attorney, respondent arranged for Hurte to be examined by Dr. St. John on December 10, 1959. In Dr. St. John's opinion Hurte did not have a ruptured disc. The record does not disclose that Dr. St. John found him fit for duty as a seaman. At the time of Dr. St. John's examination, Hurte was wearing a lumbosacral belt, prescribed by Dr. Harold Walters, a physician and surgeon, whom he had consulted in September 1959. Dr. Walters, at that time, referred him to a radiologist for x-rays, prescribed the belt and directed him to use heat applications to reduce muscle spasm. Hurte saw Dr. Walters again on October 28, 1959, December 28, 1959, and May 10, 1960. During that period of time it was recommended that he consult a neurosurgeon for the possibility of a ruptured disc.

On January 15, 1960, Hurte was examined by Dr. George E. Roulhac, a neurosurgeon of St. Louis, Missouri, and Dr. Roulhac could find no objective abnormalities in Hurte's back. He did not take any x-rays or perform a myelogram or discogram test.

On August 11, 1960, Hurte was examined by Dr. Jacques Paul Schaerer, who made the following diagnosis: muscle spasm in the low back, weakness of dorsiflexion in the right foot, difficulty in walking on his heels, tenderness over the lower lumbar region with radiation of pain into his right thigh. Dr. Schaerer recommended a myelogram and possible surgery.

On September 21, 1960, Hurte's attorney wrote respondent, calling upon him for maintenance and cure and immediate hospitalization and medical treatment. On September 29, 1960, respondent replied stating that "Hurte had recovered from his alleged injury which he claimed to have sustained on about June 14, 1959, after which he returned to work continuing until he resigned. In view of the above we deny all liability."

On November 20, 1960, Hurte was admitted to the Missouri Baptist Hospital in St. Louis, where a myelogram and a discogram were performed. The results were positive. On November 22, 1960, an operation was performed by Dr. Schaerer where the intervertebral discs between L4 and L5 and S1 were found to be ruptured and were removed. Hurte was discharged from the hospital on November 29, 1960, and went to work as a farm laborer on or about January 3, 1961, at wages of $6.00 per day. This suit was filed on November 23, 1960.

The major factual contention in this case is whether there is a causal connection between Hurte's fall aboard the vessel on June 14, 1959, and the surgical removal of two herniated discs on November 22, 1960. Throughout this period Hurte was suffering from various back ailments, which he had not experienced before. It cannot be questioned that Hurte had herniated discs in November, 1960, and that they were surgically removed. Whether the fall caused the herniated discs which incapacitated Hurte and necessitated the operation was the subject of expert medical testimony. Dr. Schaerer was unequivocal in opinion that a fall would be the cause under circumstances present in this case. While Dr. Roulhac advised that herniated discs

may be caused by many factors, he stated that you would have to relate a hernication in a causal connection to a fall, if, prior to the fall, the person had not had back trouble and following the fall, suffered muscle spasms, loss of lordoctic curve, objective neurological signs, a positive myelogram test, followed by surgical removal of the disc found to be herniated. The facts support the conclusion that Hurte's fall on the deck of the vessel on June 14, 1959, caused the injury and necessitated the surgical removal of the discs.

We further find that respondent did not offer medical care and treatment in a Public Health Service Hospital when requested to do so in September, 1960, and that the treatment by Dr. Harold Walters, Dr. Jacques Schaerer, Missouri Baptist Hospital, Dr. Harting and the Pemiscot County Memorial Hospital were necessary and reasonable.

The reasonable cost of medical care incurred by libelant is as follows:

| | | |
|---|---|---|
| X-rays at Pemiscot County Memorial Hospital, Hayti, Mo. | $ | 30.00 |
| X-rays by Dr. Harting | | 20.00 |
| Lumbosacral belt | | 16.32 |
| Dr. Walters | | 40.00 |
| Missouri Baptist Hospital | | 420.15 |
| Dr. Schaerer | | 1,725.00 |
| Total | | $2,251.47 |

The parties have agreed that if libelant is entitled to any maintenance and cure, he shall be reimbursed at the rate of $8.00 per day. From the time Hurte left the vessel in August, 1959, his activities consisted of the following: In September, 1959, he purchased a twenty-acre farm near Doniphan, Missouri, where he lived with his wife and child. The farm was not under cultivation. From September, 1959, through September, 1960, he was employed at a filling station two days a week at $6.00 a day. Hurte testified he would have worked more than two days a week, but was unable to because his back hurt. From September, 1960, to November, 1960,

Hurte sold Watkins products. Thirty-five days after the operation, Hurte returned to work as a farm laborer. Thirteen months after the operation, Dr. Schaerer examined Hurte. By then he had reached the point of maximum cure, but it is Dr. Schaerer's testimony that patients normally reach the optimum cure six months after the operation, although it is possible to reach the point of maximum cure a month after the operation. Dr. Roulhac states that a person normally reaches the point of maximum cure one year after the operation. Hurte did not have medical examination until thirteen months after the operation. The most convincing evidence as to when, during the period, he may have, in fact, reached the point of maximum cure is the date on which he returned to steady daily work. Upon the record we find that Hurte reached the point of maximum cure on or about January 3, 1961, the date upon which he returned to work. We, therefore, find that Hurte is entitled to maintenance and cure from August 11, 1959, the date when he left the vessel to seek medical treatment, to January 3, 1961, a total of 511 days, less 9 days in the hospital, or a total of 502 days at the stipulated rate of $8.00 per day or a total of $4,016. We further find that the libelant is entitled to reasonable attorney's fees in the amount of $2,089.15 and that the libelant is entitled to interest at the rate of 6% on each week's maintenance as it accrued to date.

The legal conclusions included above are based on the following authorities:

The shipowner is obligated to provide maintenance and cure during the period when a seaman is incapacitated to do seaman's work and continues until he reaches maximum medical recovery. Vaughan v. Atkinson, (1962) 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88. See also Farrell v. United States, (1949) 336 U.S. 511, 518, 69 S.Ct. 707, 93 L.Ed. 850.

Payments for maintenance are limited to periods during which he was

**890**

undergoing medical care for improvement of his condition. Ryan v. United States Lines Company, (2 Cir., 1962) 303 F.2d 430, 432. When the treatment has brought the injured seaman either complete recovery or the maximum recovery he will obtain, the shipowner's liability for maintenance terminates. Myers v. Isthmian Lines, Inc., (C.A. 1, 1960) 282 F.2d 28, cert. den. (1960) 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 461.

■ Pursuant to Title 42 U.S.C., seamen are entitled to receive medical care, treatment and necessary hospitalization at hospitals operated by or under contract with the United States Public Health Services. Courts take judicial notice of the existence and availability of such service and facilities. Calmar S. S. Corp. v. Taylor, (1938), 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. These provisions are not intended to relieve the shipowner of his duty, Aguilar v. Standard Oil Co., (1943) 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, but apart from exceptional circumstances, if the injured seaman, with actual knowledge of the availability of the Public Service Hospital, refuses the proferred care, the shipowner's duty is discharged. United States v. Loyola, (C.A. 9, 1947) 161 F.2d 126; Marshall v. International Mercantile Marine Co., (C.A. 2, 1930) 39 F.2d 551; Covert v. Centennial Queen, (D.C. Or., 1960) 185 F.Supp. 552. However, where the seaman has not been requested to go to the Public Service Hospital and has obtained reasonable and necessary treatment from private physicians, the shipowner is liable for maintenance and cure. The Bouker No. 2, (C.A. 2, 1917) 241 F. 831; Silva v. Luckenbach, S.S., (D.C.Mass., 1936) 14 F.Supp. 719; see also Levanos v. National Bulk Carriers, (C.A. 2, 1957) 248 F.2d 815.

■ Respondent's denial of liability required libelant to seek his own remedy by employing counsel. Libelant is entitled to recover attorney's fees for respondent's failure to provide that to which he was entitled—maintenance and cure. Vaughan v. Atkinson, supra.

■ Respondent is not entitled to a set-off on the judgment in the amounts received by libelant for the work he performed while being treated on an outpatient basis. Vaughan v. Atkinson, supra.