**RODGERS v. UNITED STATES LINES CO.**
**The JOHN M. BOZEMAN.**

No. 6215.

United States Court of Appeals
Fourth Circuit.

Argued April 3, 1951.

Decided May 11, 1951.

Roy L. Sykes and R. Arthur Jett, Norfolk, Va. (Jett, Sykes & Howell, Norfolk, Va., on the brief), for appellant.

Leon T. Seawell, Norfolk, Va., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal and a cross-appeal in an action in admiralty instituted in the United States District Court for the Eastern District of Virginia. Hugo B. Rodgers sued the United States Lines Company (hereinafter called United), as operator of the steamship John M. Bozeman, asking damages for personal injuries resulting from United's alleged negligence and the unseaworthiness of its steamship John M. Bozeman. Rodgers asked further relief by reason of United's failure to provide him with proper medical and dental care after the accident occurred; he also requested maintenance for the period of his convalescence.

Rodgers, at the time of the accident in question, was first assistant engineer on the John M. Bozeman, en route to Cherbourg, France, from Norfolk, Virginia. He had shipped on this same vessel on a prior voyage. During that trip the ship's No. 2 generator had on occasions overspeeded, causing oil to be thrown upon the generator platform. Investigation revealed that this condition was due to worn valves, valve stems and pins in the generator. A request

had been made to have this defective condition corrected upon the ship's return to this country but no repairs were made.

On January 18, 1948, during Rodgers' second voyage and while he was on watch in the engine room, the No. 2 generator overspeeded; Rodgers immediately left the throttle and ascended to the generator platform, some fifteen feet above the engine room deck. He testified that the overspeeding generator was throwing oil upon the generator platform, and he immediately cut out the No. 2 generator and cut in the No. 1 generator.

Rodgers was standing in a position to the right of the front of the No. 2 generator, making an adjustment on that machine with a wrench, when suddenly the No. 1 generator overspeeded, whereupon he reached with his free, right hand to the rear of No. 1 generator to cut it off. While standing in this position, pulling on the wrench with his left hand and with his right hand on the cut-off valve at the rear of the No. 1 generator, the wrench slipped, Rodgers lost his balance, fell over the guard rail on the generator platform to the engine room deck below and was severely injured.

The testimony indicates that the ship was plying very rough seas at the time of Rodgers' fall. First aid was rendered by the ship's purser and when the vessel reached Cherbourg, Rodgers was taken to a dentist but no real treatment was given him. At Rouen, France, he requested medical care but none was afforded.

The District Court found that United was not guilty of negligence nor was its ship unseaworthy, and even if there had been negligence, such negligence was not the proximate cause of Rodgers' injuries. Rodgers has appealed from this finding. The court further determined that United had failed to provide Rodgers with the necessary dental and medical care after he was injured and awarded him damages in the amount of $2,500. The court also awarded Rodgers maintenance at the rate of $6.00 per day from February 23, 1948, to and including December 31, 1948, except for certain periods when Rodgers had found employment. This award amounted to $1,020. United has cross-appealed from these two latter findings.

Turning first to Rodgers' contention that the trial court erred in finding that he had proven neither United guilty of negligence nor its vessel unseaworthy, we do not feel it necessary to pass on this question as the District Court also found: "That the evidence does not establish that the respondent was guilty of negligence or that the vessel John M. Bozeman was unseaworthy but if the alleged negligence of the respondent or the alleged unseaworthiness of the vessel had been established, it would not have sustained liability for the reason that it neither caused, nor contributed to cause, the libellant's fall and injuries as his fall and injury were due solely and proximately to his loss of balance while making the adjustments of No. 2 generator as aforesaid."

If this determination of no negligence be error, it is harmless error, for the decisive question is whether Rodgers' fall was due to the slipping of the wrench and the consequent loss of balance or to the grease and oil on the generator platform caused by the defective generators.

Whether factor A or factor B is the proximate cause of an injury is one of fact to be resolved by the trial court. Rodgers testified that his slipping was due to the oil and grease, and he introduced other evidence showing there was grease and oil on the generator platform. However, the trial judge, who was in a position to hear all the testimony and examine all the witnesses, concluded:

"If there was oil on the platform, the evidence does not show that it caused, or contributed to cause, the libellant's fall or injury. There is no causal connection demonstrated between the oil or grease and the fall. * * *

"In his (Rodgers') verbal statement to Fielding, his chief, immediately after his fall, in his written statement soon afterwards, and in his letter several weeks later, the libellant always explained the cause of his fall to be his loss of balance when the wrench, which he had placed around the adjusting screw on generator 2, slipped as he was pulling on it. Moreover, the

posture of the libellant at the time of the fall, according to his testimony, negatives the view that his fall was occasioned by slipping on grease or oil upon the platform."

This Court is not free to overturn a finding of fact by a trial court unless it is clearly erroneous. As was said in Arundel Corp. v. Wathen, 4 Cir., 55 F.2d 228: "This court has repeatedly laid down the rule that the finding of a trial judge, who had the opportunity of seeing the witnesses, hearing their story, judging their appearance, manner, and credibility, on a question of fact, is entitled to great weight and will not be set aside unless clearly wrong. Virginia Shipbuilding Corporation et al. v. United States, 4 Cir., 22 F.2d 38; Lewis v. Jones, 4 Cir., 27 F.2d 72; Chesapeake Lighterage & Towing Co., Inc. v. Baltimore Copper Smelting & Rolling Co., 4 Cir., 40 F.2d 394; Lambert Lumber Co. v. Jones Engineering & Construction Co., Inc. et al., 8 Cir., 47 F.2d 74; Commercial Casualty Ins. Co. v. Williams, 4 Cir., 49 F.2d 472."

See, also, Hudgins v. Gatewood, 4 Cir., 85 F.2d 939, 940; Standard Transportation Co. v. Wood Towing Corp., 4 Cir., 64 F.2d 282, 283. Applying this rule to our case, we must conclude the District Court's determination that the slipping of the wrench rather than the grease and oil was the proximate cause of Rodgers' injuries was not clearly erroneous.

The next question presented by this appeal is whether United has breached its obligation to furnish Rodgers with medical treatment after his fall. It is well settled that the captain of a vessel owes the duty of providing medical care to an injured member of his crew. The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; Morris v. United States, 2 Cir., 3 F.2d 588, 591. The duty owed a seaman is succinctly stated in 56 Corpus Juris, 1069–1070:

"Where the nature of his disability is such as to require it, and the circumstances reasonably permit, he should be relieved from duty, moved to more comfortable quarters, brought suitable food, and receive nursing and medical treatment. The employer is under a duty to provide ordinary and reasonable but not extraordinary medical care.

"Hospitalization. Where the disability apparently necessitates it and circumstances permit, a disabled seaman should be sent to a hospital. * * *"

The District Court found as follows: "That as a result of the fall his chin was severely lacerated, numerous teeth were broken and shattered and he received painful injuries to his neck and right arm; that he received first aid treatment from the purser, but the purser had no certificate as a pharmacist mate and no medical training except a first aid course, but the Coast Guard had granted the vessel a waiver of such a certificate; that on the vessel's arrival in Cherbourg, France, he was taken to a dentist but nothing of consequence was done for him there, and that at Rouen he asked for medical treatment but received none; that he suffered greatly during the vessel's return voyage, being unable to eat or sleep in comfort, but stood his regular watches."

In the light of this finding of fact, we feel that United breached its duty to furnish medical and dental care to Rodgers.

The final question is whether this is a proper case for maintenance. United contends maintenance was improper because Rodgers refused to accept medical care offered at the Marine Hospital in Norfolk. In our opinion, Rodgers' election to receive private medical treatment is not a bar to maintenance. As said by Mr. Justice Jackson in Farrell v. United States, 336 U.S. 511, 516, 69 S.Ct. 707, 709, 93 L.Ed. 850: "It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or condition to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize— insubordination, disobedience to orders, and gross misconduct."

This Court does not feel disposed to engraft another exception upon the maintenance rule.

For these reasons, the opinion of the District Court is affirmed.

Affirmed.