VAUGHAN *v.* ATKINSON ET AL.

No. 323.  Argued March 22, 1962.—Decided May 14, 1962.

*Jacob L. Morewitz* argued the cause and filed a brief for petitioner.

*Walter B. Martin, Jr.* argued the cause for respondents. With him on the brief was *Barron F. Black.*

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE BRENNAN.

This is a suit in admiralty brought by a seaman to recover (a) maintenance and cure and (b) damages for

failure to pay maintenance and cure.[1]  The District Court, while disallowing the claim for damages, granted maintenance, less any sums earned by the libellant during the period in question.  200 F. Supp. 802.  The Court of Appeals affirmed, Chief Judge Sobeloff dissenting.  291 F. 2d 813.  The case is here on a writ of certiorari.  368 U. S. 888.

Libellant served on respondents' [2] vessel from November 26, 1956, to March 2, 1957, when he was discharged on termination of a voyage.  On March 7, 1957, he reported to a United States Public Health Service Hospital for examination and was admitted on March 18, 1957, as an inpatient, and treated for suspected tuberculosis.  On June 6, 1957, he was discharged to an outpatient status and he remained in that status for over two years.  On August 25, 1959, he was notified that he was fit for duty as of August 19, 1959.

The hospital records show a strong probability of active tuberculosis.  The Master furnished libellant a certificate to enter the hospital on his discharge, March 2, 1957.  Though libellant forwarded to the owner's agent an abstract of his clinical record at the hospital in 1957, the only investigation conducted by them was an interrogation of the Master and Chief Engineer, who stated that the libellant had never complained of any illness during his four months' service.  The owner made no effort to make any further investigation of libellant's claim for maintenance and cure, and according to the findings did not bother even to admit or deny the validity

---

[1] Claims for damages for the illness and for wages, disallowed below, are not presented here.

[2] The owner was American Waterways Corp., and National Shipping & Trading Corp. was its agent, both being respondents. Respondent Atkinson was the Master.

of that claim. Nearly two years passed during which libellant was on his own. Ultimately he was required to hire an attorney and sue in the courts to recover maintenance and cure, agreeing to pay the lawyer a 50% contingent fee. Even so, the District Court held that no damages for failure to furnish maintenance and cure had been shown. In its view such damages are payable not for attorney's fees incurred but only when the failure to furnish maintenance and cure caused or aggravated the illness or other physical or mental suffering.

The District Court first allowed maintenance at the rate of $8 a day from June 6, 1957, to February 18, 1959. Since libellant during that period had worked as a taxi driver, the District Court ordered that his earnings be deducted from the amount owed by respondents. Subject to that credit, the order also provided that maintenance at $8 per day be continued until such time as the libellant reached the maximum state of recovery. The District Court allowed in addition 6% interest for each week's maintenance unpaid. Subsequently the District Court extended the maintenance to cover the period from March 7, 1957, to March 17, 1957, and from February 18, 1959, through August 25, 1959, these later awards being without interest.

The Court of Appeals denied counsel fees as damages, relying on the conventional rule that in suits for breach of contract the promisee is not allowed that item in computing the damages payable by the promisor. And the Court of Appeals, following *Wilson* v. *United States,* 229 F. 2d 277, and *Perez* v. *Suwanee S. S. Co.,* 239 F. 2d 180, from the Second Circuit, held that a seaman has the duty to mitigate damages and that since "the purpose of maintenance and cure is to make the seaman whole," "he will get something more than he is entitled to" unless his

earnings during the period are deducted. 291 F. 2d, at 814, 815.

We disagree with the lower courts on both points.

## I.

Equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief. See *Swift & Co.* v. *Compania Caribe,* 339 U. S. 684, 691–692, where we said, "We find no restriction upon admiralty by chancery so unrelenting as to bar the grant of any equitable relief even when that relief is subsidiary to issues wholly within admiralty jurisdiction."

Counsel fees have been awarded in equity actions, as where Negroes were required to bring suit against a labor union to prevent discrimination. *Rolax* v. *Atlantic Coast Line R. Co.,* 186 F. 2d 473, 481. As we stated in *Sprague* v. *Ticonic Bank,* 307 U. S. 161, 164, allowance of counsel fees and other expenses entailed by litigation, but not included in the ordinary taxable costs regulated by statute, is "part of the historic equity jurisdiction of the federal courts." We do not have here that case. Nor do we have the usual problem of what constitutes "costs" in the conventional sense. Cf. *The Baltimore,* 8 Wall. 377. Our question concerns damages. Counsel fees were allowed in *The Apollon,* 9 Wheat. 362, 379, an admiralty suit where one party was put to expense in recovering demurrage of a vessel wrongfully seized. While failure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows (*The Iroquois,* 194 U. S. 240), the recovery may also include "necessary expenses." *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371.

In the instant case respondents were callous in their attitude, making no investigation of libellant's claim and

by their silence neither admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one.[3]

## II.

Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery. The policy underlying the duty was summarized in *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 528:

> "The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in *Harden* v. *Gordon,* Fed. Cas. No. 6047 (C. C.): the protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service."

Admiralty courts have been liberal in interpreting this duty "for the benefit and protection of seamen who are

---

[3] Whether counsel fees in the amount of 50% of the award are reasonable is a matter on which we express no opinion, as it was not considered by either the District Court or the Court of Appeals.

its wards." *Id.*, at 529. We noted in *Aguilar* v. *Standard Oil Co.*, 318 U. S. 724, 730, that the shipowner's liability for maintenance and cure was among "the most pervasive" of all and that it was not to be defeated by restrictive distinctions nor "narrowly confined." *Id.*, at 735. When there are ambiguities or doubts, they are resolved in favor of the seaman. *Warren* v. *United States*, 340 U. S. 523.

Maintenance and cure differs from rights normally classified as contractual. As Mr. Justice Cardozo said in *Cortes* v. *Baltimore Insular Line, supra,* 371, the duty to provide maintenance and cure [4] "is imposed by the

---

[4] It derives from Article VI of the Laws of Oleron, 30 Fed. Cas. 1171, 1174:

"If any of the mariners hired by the master of any vessel, go out of the ship without his leave, and get themselves drunk, and thereby there happens contempt to their master, debates, or fighting and quarrelling among themselves, whereby some happen to be wounded: in this case the master shall not be obliged to get them cured, or in any thing to provide for them, but may turn them and their accomplices out of the ship; and if they make words of it, they are bound to pay the master besides: but if by the master's orders and commands any of the ship's company be in the service of the ship, and thereby happen to be wounded or otherwise hurt, in that case they shall be cured and provided for at the costs and charges of the said ship."

Justice Story, in holding that maintenance and cure was a charge upon the ship, said concerning its history:

"The same principle is recognised in the ancient laws of Wisbuy (Laws of Wisbuy, art. 19), and in those of Oleron, which have been held in peculiar respect by England, and have been in some measure incorporated into her maritime jurisprudence. The Consolato del Mare does not speak particularly on this point; but from the provisions of this venerable collection of maritime usages in cases nearly allied, there is every reason to infer, that a similar rule then prevailed in the Mediterranean. Consolato del Mare, cc. 124, 125; Boucher, Consulat de la Mer, cc. 127, 128. Molloy evidently adopts it as a general doctrine of maritime law (Molloy, b. 2, c. 3, § 5, p. 243); and

law itself as one annexed to the employment. . . . Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident."

In *Johnson* v. *United States,* 333 U. S. 46, we held that a seaman who while an outpatient was living on his parents' ranch without cost to himself was not entitled to maintenance payments. There maintenance and cure was wholly provided by others. Here the libellant was on his own for nearly two years and required to work in order to survive. It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings. This would be a dreadful weapon in the hands of unconscionable employers and a plain inducement, as Chief Judge Soboleff said below (291 F. 2d, at 820), to use the withholding of maintenance and cure as a means of forcing sick seamen to go to work when they should be resting, and to make the seamen themselves pay in whole or in part the amounts owing as maintenance and cure. This result is at war with the liberal attitude that heretofore has obtained and with admiralty's tender regard for seamen. We think the view of the Third Circuit (see *Yates* v. *Dann,* 223 F. 2d 64, 67) is preferable to that of

---

two elementary writers of most distinguished reputation have quoted it from the old ordinances without the slightest intimation, that it was not perfectly consonant with the received law and usage of England. Abb. Shipp. p. 2, c. 4, § 14; 2 Brown, Adm. 182–184. There is perhaps upon this subject a greater extent and uniformity of maritime authority, than can probably be found in support of most of those principles of commercial law, which have been so successfully engrafted into our jurisprudence within the last century." *Harden* v. *Gordon,* 11 Fed. Cas. 480, 483.

the Second Circuit as expressed in *Wilson* v. *United States* and *Perez* v. *Suwanee S. S. Co., supra,* and to that of the Fourth Circuit in this case.

*Reversed.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, whom MR. JUSTICE HARLAN joins, dissenting.

I agree with the Court that whether earnings received by a disabled seaman prior to his maximum medical recovery are to be credited against the shipowner's obligation for maintenance is an issue which should not be resolved by a mechanical application of the rules of contract law relating to mitigation of damages. But I cannot agree that in this case the petitioner's earnings should not have been set off against the maintenance owed to him. Nor can I agree with the Court's conclusion that the petitioner is entitled as a matter of law to damages in the amount of the counsel fees expended in his suit for maintenance and cure.

The duty to provide maintenance and cure is in no real sense contractual, and a suit for failure to provide maintenance or cure can hardly be equated, therefore, with an action for breach of contract. "The duty . . . is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties." *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 372. Moreover, if the seaman's accountability for earnings were to be determined solely by reference to damage mitigation principles of contract law, the breach of the shipowner's duty to pay main-

tenance would become crucial, since without such a breach on his part no duty to mitigate would arise.[1] The assignment of such a dispositive role to the shipowner's failure to perform his obligation would create an unwarranted incentive for refusing to perform it.

The issue should be decided, rather, with reference to the scope of the duty which the admiralty law imposes. The obligation of a shipowner, irrespective of fault, to provide maintenance and cure to a seaman injured or taken ill while in the ship's service has lost much of its original significance in this era of relaxed unseaworthiness and negligence concepts. But the obligation is of ancient origin,[2] first recognized in our law in *Harden* v. *Gordon,* 11 Fed. Cas. 480, No. 6,047, and *Reed* v. *Canfield,* 20 Fed. Cas. 426, No. 11,641.[3] The duty was historically imposed in order to alleviate the physical and financial hardships which otherwise would have beset a sick or injured seaman put ashore, perhaps in a foreign port, without means of support, or hope of obtaining medical care. See *Harden* v. *Gordon, supra,* at 483 (Story, J.). The law

[1] McCormick, Damages, §§ 158–160; Restatement, Contracts, § 336 (1); 5 Corbin, Contracts, § 1041.

[2] The earliest codifications of the law of the sea provided for medical treatment and wages for mariners injured or falling ill in the ship's service. These early maritime codes are, for the most part, reprinted in 30 Fed. Cas. 1171–1216. See Arts. VI and VII of the Laws of Oleron, 30 Fed. Cas. 1174–1175; Arts. XVIII, XIX, and XXXIII of the Laws of Wisbuy, 30 Fed. Cas. 1191, 1192; Arts. XXXIX and XLV of the Laws of the Hanse Towns, 30 Fed. Cas. 1200; and Title Fourth, Arts. XI and XII, of the Marine Ordinances of Louis XIV, 30 Fed. Cas. 1209. These provisions may also be found reprinted in 2 Norris, The Law of Seamen, § 537. Other provisions rather similar to the present maintenance and cure remedy may be found in the Ordinances of Trani, Art. X, 4 Black Book of the Admiralty (Twiss' ed. 1876) 531; The Tables of Amalphi, Art. 14, 4 Black Book of the Admiralty (Twiss' ed. 1876) 13.

[3] See Gilmore and Black, Admiralty, 253.

of the sea sought to alleviate these hardships, partly for humanitarian reasons, and partly because of the strong national interest in maintaining the morale and physical effectiveness of the merchant marine. *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 528.

But "[t]he duty does not extend beyond the seaman's need." *Calmar S. S. Corp.* v. *Taylor, supra,* at 531. It ends absolutely when a point of maximum medical recovery has been reached. *Id.,* at 530; *Farrell* v. *United States,* 336 U. S. 511. And when the seaman has not incurred expense, the shipowner has no obligation to make payment.[4] Thus a seaman hospitalized without expense in a marine hospital is not entitled to maintenance and cure for that period. *Calmar S. S. Corp.* v. *Taylor, supra,* at 531. Nor must the shipowner pay maintenance to a seaman who convalesces at the home of his parents without incurring expense or liability for his support. *Johnson* v. *United States,* 333 U. S. 46, 50.

Since the limited purpose of maintenance is to make the seaman whole, it would logically follow that there should be no such duty for periods when the seaman, though not yet at the point of maximum cure, either does in fact obtain equivalently gainful employment or is able to do so.[5] Moreover, no rule which keeps able workers idle can

---

[4] See *Stankiewicz* v. *United Fruit S. S. Corp.,* 229 F. 2d 580; *Williams* v. *United States,* 228 F. 2d 129; *Dodd* v. *The M/V Peggy G.,* 149 F. Supp. 823; *Nunes* v. *Farrell Lines, Inc.,* 129 F. Supp. 147, affirmed as to this point, 227 F. 2d 619; *Ballard* v. *Alcoa S. S. Co., Inc.,* 122 F. Supp. 10; Gilmore and Black, Admiralty, 266; 2 Norris, The Law of Seamen, § 568.

[5] Similarly, there is generally no duty to make payments for cure if marine hospital service is available, and a seaman seeks hospitalization elsewhere. *United States* v. *Loyola,* 161 F. 2d 126; *United States* v. *Johnson,* 160 F. 2d 789; *Marshall* v. *International Mercantile Marine Co.,* 39 F. 2d 551; *Zackey* v. *American Export Lines, Inc.,*

be deemed a desirable one.[6]   But there are countervailing policies involved in resolving the issue.   The adequate protection of an injured or ill seaman against suffering and want requires more than the assurance that he will

152 F. Supp. 772; *Benton* v. *United Towing Co.*, 120 F. Supp. 638. See *Kossick* v. *United Fruit Co.*, 365 U. S. 731, 737; *Calmar S. S. Corp.* v. *Taylor*, 303 U. S. 525, 531.   In exceptional circumstances, however, where adequate treatment is not available at a marine hospital, expenses incurred for hospitalization elsewhere may be chargeable to the shipowner.   *Williams* v. *United States*, 133 F. Supp. 319, aff'd, 228 F. 2d 129.

[6] Actual earnings during a period prior to maximum cure have been allowed as an offset against maintenance payments in many reported cases, usually without discussion.   *Rodgers* v. *United States Lines Co.*, 189 F. 2d 226; *Inter Ocean S. S. Co.* v. *Behrendsen*, 128 F. 2d 506; *Loverich* v. *Warner Co.*, 118 F. 2d 690; *Colon* v. *Trinidad Corp.*, 188 F. Supp. 97; *Scott* v. *Lykes Bros. S. S. Co.*, 152 F. Supp. 104; *Benton* v. *United Towing Co.*, 120 F. Supp. 638, aff'd, 224 F. 2d 558; *Steinberg* v. *American Export Lines, Inc.*, 81 F. Supp. 362; *Burch* v. *Smith*, 77 F. Supp. 6; *The Eastern Dawn*, 25 F. 2d 322. In *Wilson* v. *United States*, 229 F. 2d 277, the court held, after discussion, that the shipowner should be permitted to offset potential earnings, the seaman having failed to establish that he could not have secured work.   The seaman had done some work during the period, and had not sought maintenance for the days he was actually employed.   The same court subsequently ruled that under *Wilson* a recuperating seaman must account for actual earnings.   *Perez* v. *Suwanee S. S. Co.*, 239 F. 2d 180.

In three cases setoff of actual earnings has been denied.   In *Yates* v. *Dann*, 124 F. Supp. 125, the district judge found that the seaman had been "in need" throughout the whole period and should not be "penalized" because he returned to work.   The case was reversed on other grounds, 223 F. 2d 64, the court sustaining the ruling of the District Court on this point with the statement that "the circumstance that appellee was forced by financial necessity to return to his regular employment is not legally a bar to his recovery."   223 F. 2d, at 67.   See also *Hanson* v. *Reiss Steamship Co.*, 184 F. Supp. 545, 550 ("Liability for maintenance and cure does not necessarily cease when the injured person obtains gainful occupation where such

receive payments at some time in the indefinite future. Payments must be promptly made, at a time contemporaneous to the illness or injury. And for this reason the maintenance remedy should be kept simple, uncluttered by fine distinctions which breed litigation, with its attendant delays and expenses. See *Farrell* v. *United States,* 336 U. S. 511, 516. A shipowner should therefore not be encouraged to withhold maintenance payments in the hope that economic necessity will force the seaman back to work and thereby reduce the shipowner's liability. Moreover, maintenance payments are designed to meet the living expenses of the seaman until maximum cure is reached. The ultimate goal is the recovery of the seaman, and this requires the avoidance of pressures which would force him to obtain employment which hinders his recovery.[7]

The need for prompt payment and the desirability of avoiding any rule which might force a seaman back to work to the detriment of his recovery might well require that no compulsion to seek employment be placed on a convalescing seaman, and that a setoff be allowed only with respect to actual, as opposed to potential, earnings. But this question is not presented by the record before us. Similarly, it may well be that a seaman should not be held to account for actual earnings to a shipowner whose dereliction in making payments compels the seaman, as

employment is compelled or induced by economic necessity."); *Meirino* v. *Gulf Oil Corp.,* 170 F. Supp. 515, 517 ("The fact that libellant returned to work because of economic necessity while he was in need of medical care and attention does not deprive him of his right to maintenance and cure.").

[7] A seaman whose condition is actually aggravated by reason of the shipowner's dereliction in making maintenance and cure payments may of course seek damages above and beyond the maintenance and cure payments due. *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367. But the availability of this remedy does not detract from the importance of avoiding the harmful effects of a premature return to work.

a matter of economic necessity, to obtain gainful employment.   But that question is not presented by the present case either, for there is no showing here that the seaman's return to work was brought on by economic necessity.   So far as the record before us indicates, the petitioner's return to work was completely voluntary, and not the result of the shipowner's failure to pay maintenance.   Holding the seaman accountable for his earnings in such circumstances carries out the basic purpose of making the seaman whole, and creates neither an undue incentive for withholding payments, nor pressure compelling a premature return to work.   I therefore think that the District Court and the Court of Appeals were right in holding that the petitioner was not entitled to maintenance for the period during which he was gainfully employed as a taxicab driver.[8]

The second issue presented in this case is whether the petitioner should have been awarded damages in the amount of the counsel fees incurred in bringing his action for maintenance and cure.   The Court held in *Cortes* v. *Baltimore Insular Line, supra,* at 371, that "[i]f the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt."   But neither the *Cortes* decision, nor any other that I have been able to find, furnishes a basis for holding as a matter of law that a seaman

---

[8] I would, however, remand the case to the District Court for recomputation of its award.  Maintenance is a day-by-day concept, and in my view maintenance should be reduced or denied only as to days during which the petitioner was gainfully employed.  Instead, the District Court computed the total amount of maintenance due, and then deducted the total amount earned by the petitioner.  Compare *Perez* v. *Suwanee S. S. Co.,* 239 F. 2d 180, with *Wilson* v. *United States,* 229 F. 2d 277.  See the full discussion of this aspect of the problem in Note, 37 N. Y. U. L. Rev. 316, 320–321.

forced to bring suit to recover maintenance and cure is also entitled to recover his counsel fees. *Cortes* dealt with compensatory damages for a physical injury, and the opinion in that case contains nothing to indicate a departure from the well-established rule that counsel fees may not be recovered as compensatory damages. McCormick, Damages, § 61.

However, if the shipowner's refusal to pay maintenance stemmed from a wanton and intentional disregard of the legal rights of the seaman, the latter would be entitled to exemplary damages in accord with traditional concepts of the law of damages. McCormick, Damages, § 79. While the amount so awarded would be in the discretion of the fact finder, and would not necessarily be measured by the amount of counsel fees, indirect compensation for such expenditures might thus be made. See *Day* v. *Woodworth,* 13 How. 363, 371. On this issue I would accordingly remand the case to the District Court, so that the circumstances which motivated the respondents' failure to make maintenance payments could be fully canvassed.