Robert L. HUDGINS, Plaintiff,

v.

MOCKINGBIRD, INC., Defendant.

Civ. A. No. 1271.

United States District Court
E. D. Virginia,
Newport News Division.

March 8, 1968.

Carter B. S. Furr, Norfolk, Va., for plaintiff.

Morton H. Clark, Norfolk, Va., for defendant.

## MEMORANDUM ORDER

KELLAM, District Judge.

Plaintiff prosecutes this suit as a seaman against Mockingbird, Incorporated, owner of the fishing vessel MOCKINGBIRD, without the payment of costs, as allowed by 28 U.S.C. § 1916. Plaintiff was employed as an engineer aboard the MOCKINGBIRD, which had a five man crew. The vessel was operated under what is called a "Hampton Lay"—that is, the owner and crew shared in the catch, 40% to the owner, and 60% to the crew. The vessel was under the command of Captain Floyd Hansen. On the first trip out, the parties encountered difficulty and returned to port for repairs. On or about April 25, 1967, the vessel and crew set out for fishing grounds off the coast of New Jersey. While the weather was good when the trip commenced, soon after arrival a storm developed, and the vessel sank. The captain testified that after the storm arose, he tried to return to port, but was unable to do so. The waves washed over the deck and, because the doors to the engine room would not close tightly, the water went into the engine room. There was leakage around the pilot house, and through the side of the vessel. The pumps were not capable of pumping the water out as fast as it came in. Eventually the power and heat were gone, and there was no hope of saving the vessel. The Coast Guard had been notified and was standing by with one of its boats to give aid. There was only one life boat on the MOCKINGBIRD, and that had one side rotted away. The life raft could not be inflated. The only hope of the crew was to jump overboard and swim to the Coast Guard boat. The captain tied the five men together and one by one they jumped into the water. While in the water Hudgins was struck and injured by the vessel as it floundered in the waves. Eventually all of the crew were hauled aboard the Coast Guard vessel and returned to port. Bishop Amory, president of Mockingbird, Incorporated, owner of the vessel, had knowledge of the condition of the life boats and life raft. In fact, pursuant to his direction the crew had thrown one of the two life boats which had been on the vessel into the sea because it was not capable of use or repair. He had also agreed to secure another life boat for use on the next trip. He knew of the condition of the doors to the engine room, and of the leakage around the pilot house.

Plaintiff was treated at Public Health Hospital and by Dr. Donald Levy, a neurologist. While in the water, he was struck across the forehead and face by the vessel as it floundered in the waves. He suffered headaches, backaches, had difficulty in walking, and nervousness. Dr. Levy diagnosed the injury as "Severe traumatic contusions and strains involving the left trapezius and the right lumbar area and sacral area." On a visit to Dr. Levy on October 5, 1967, plaintiff was advised to return to work. Examination was normal, but plaintiff was continued on his medication for pain and muscle relaxers. Dr. Levy was of the opinion he would be fully recovered one year from the date of the accident. The Public Health Service Hospital attendants had told plaintiff to return to work in June 1967. He said he tried to, but could not work. Later he tried to obtain employment aboard ship, but no one would accept him until he was fully recovered. He says he still has the knot on his head from the blow from the ship while he was in the water, and still suffers from headaches and back pains. The end of October 1967, he obtained employment as an automobile mechanic at a wage of $150.00 to $175.00 per week.

Plaintiff lost all of his clothing, a radio and his mechanic's tools when the vessel sank. He valued them at $600.00. The other special items of damage are $90.00 to Dr. Levy, $75.00 cost of trips from Hampton to doctor in Norfolk, and

$5.00 for services of the physician in New Jersey. He was paid maintenance by the defendant at $7.00 per day until August 7, 1967. He said it cost him $8.00 to $10.00 a day for him to maintain himself.

■ The evidence establishes that the vessel was unseaworthy and that defendant was guilty of negligence, all of which was a proximate cause of the injury to the plaintiff. Plaintiff was not guilty of any contributory negligence which proximately contributed to cause the accident and injury. As a result, plaintiff is entitled to recover.

Defendant in his answer set up and claimed the benefit of limitation of liability as permitted by Title 46 U.S.C. §§ 183–189.

■ Liability of the owner of a vessel for injury may be limited to the value of the interest of the owner in the vessel where caused by any act done, occasioned or incurred without the privity or knowledge of such owner. The knowledge of the managing agent, or of the owner, at or prior to the commencement of the voyage, is deemed conclusively the privity or knowledge of the owner.[1] The evidence in this case established that the condition of the vessel was known to and discussed with Bishop Amory, an officer and managing agent of the defendant. Although he was present in court, he did not testify. In order to limit liability, the burden was on defendant to prove lack of privity or knowledge. Coryell v. Phipps, 317 U.S. 406, 409, 63 S.Ct. 291, 87 L.Ed. 363; China Union Lines, Ltd. v. A. O. Andersen & Co., 364 F.2d 769, 787 (5th Cir. 1966). This defendant has failed to do.

■ Plaintiff was a seaman and was injured while so acting. He was paid maintenance and cure from date of injury to August 7th. His right to maintenance and cure extends "during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery."

Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88. Dr. Levy advised him to return to work October 5, 1967. He did not secure employment as a seaman, but as an automobile mechanic. It is not clear from the evidence whether he sought employment as a seaman. He is entitled to maintenance at $8.00 per day from August 7, 1967, through October 5, 1967.

■ Although plaintiff secured employment the end of October 1967 as an automobile mechanic, he still had some pain and residual from his injury. Dr. Levy said this would continue for a year after date of the injury. He had loss of property and medical expenses of some $770.00. He had loss of income until the end of October 1967. Under the circumstances, he is awarded a verdict of $7,500.00.