Milton M. MORT, Plaintiff,

v.

WEYERHAEUSER COMPANY, SS C. R. MUSSER, her engines, etc., Defendant.

No. 65 AD 9.

United States District Court
S. D. New York,
Civil Division.
Nov. 20, 1968.

Paul C. Matthews, New York City, for plaintiff.

Symmers, Fish & Warner, New York City, for defendant; Frederick Fish, New York City, of counsel.

## FINDINGS OF FACT AND CONCLUSION OF LAW

LASKER, District Judge.

This action, brought by a seaman under the general maritime law to recover for maintenance, transportation, unearned wages, damages resulting from nonpayment thereof, and counsel fees, arising out of employment as an ordinary seaman aboard the defendant's SS C. R. MUSSER, was tried to the court.

### FINDINGS OF FACT

1. Defendant is a corporation organized and existing under the laws of the State of Washington, with a principal place of business at Tacoma, and at all times hereinafter mentioned was the owner and operator of the SS C. R. MUSSER.

2. The SS C. R. MUSSER was a modified Liberty type cargo vessel engaged in defendant's intercoastal service.

3. Plaintiff is a United States citizen, born on 31 December, 1943, who has received education through the second year of high school.

4. In 1962, plaintiff became ill with infectious mononucleosis.

5. A year or a year and a half prior to August 1964, plaintiff first experienced periods of rectal bleeding. In July of 1964, due to a reoccurrence of rectal bleeding, plaintiff made an appointment for a checkup at the General Medical Clinic at the University of California Medical Center. The plaintiff made three visits to the clinic, the first visit on 5 August, 1964. Plaintiff was given an appointment to return to the clinic around the 1st of September, but plaintiff failed to keep this appointment. Plaintiff phoned the clinic and was told by the receptionist that he was in good health and could go to sea. During the time plaintiff was going to the clinic, plaintiff was engaged in carpentry and plumbing work, and he was never told by the doctor at the clinic that he could not work.

6. On 5 October 1964 plaintiff was assigned to his job as an ordinary seaman on the SS C. R. MUSSER. At this time, plaintiff was twenty years of age, and this was his first experience going to sea.

7. After being assigned the seaman's job, plaintiff was sent for a physical examination at the SIU-PD & PMA Medical Examination Center in San Francisco. Prior to the physical examination, plaintiff was given a medical questionnaire to fill out. Plaintiff did not fill out the questionnaire accurately. The court notes that plaintiff specifically checked negatively the questions which asked whether he had ever had piles, hemorrhoids, or rectal fistula, or any disease of the bowel or intestinal tract. Plaintiff also failed to answer questions pertaining to his then state of health and as to when he was last attended by a physician or had been hospitalized. The questions which plaintiff omitted followed immediately questions which were described on the questionnaire in bold type to be "For Women Applicants."

8. At the time plaintiff filled out the questionnaire, plaintiff was free of any of the above mentioned symptoms, felt well, and considered himself fit to undertake employment as a seaman. While plaintiff was seriously negligent in the manner he filled out the questionnaire, the court found him to be a credible witness when he testified that he didn't see the questions which he failed to answer. Because of plaintiff's honest demeanor on the stand, and bearing in mind his youth and inexperience at the time in question, the court finds that when he went on board the SS C. R. MUSSER on October 6, 1964, plaintiff, in good faith, believed that he was fit to perform the duties of a seaman.

9. After loading lumber on the west coast, the vessel departed from Coos Bay, Oregon, bound for Boston, Massachusetts, via the Panama Canal.

10. While the vessel was enroute to the Panama Canal, plaintiff became ill, suffering from diarrhea with a reoccurrence of rectal bleeding. Plaintiff also was nauseous and experienced hot and cold flashes.

11. Plaintiff was sent ashore to the hospital at the Canal Zone, where the doctor was suspicious of parasitic infestation. He was returned to the vessel, fit for light duty, but advised to see a doctor on arrival at Boston.

12. On arrival at Boston on 11 November 1964, plaintiff reported to the United States Public Health Service at Brighton, Massachusetts, where he was hospitalized until the 16th of November, 1964, for medical investigation. After preliminary examination at the hospital, he was allowed by the hospital authorities to return to the vessel to obtain his personal effects.

13. Prior to leaving the SS C. R. MUSSER, plaintiff received from the

defendant approximately $350, constituting full payment of wages earned to that date. Under the circumstances, plaintiff was not penniless.

14. Upon his discharge from the hospital in Brighton, plaintiff was not fit for duty as a seaman.

15. On 25 November 1964, plaintiff appeared in the Screening Clinic of the United States Public Health Service Hospital at Staten Island, New York, complaining of an upper respiratory infection. Plaintiff was marked not fit for duty and told to return to the clinic on the 30th of November. On 30 November plaintiff returned to the Screening Clinic, reported that he felt improved, and was marked fit for duty.

16. Plaintiff demanded maintenance from the defendant and his transportation back to the west coast, but such payments were refused.

17. Defendant's refusal to make such payments was erroneous, but the court finds that such refusal was not arbitrary and in bad faith. In denying the payments, defendant understandably believed (in the light of plaintiff's negligent failure to answer his sign-on physical examination questions) that plaintiff intentionally concealed a pre-existing illness from the doctor at the pre-sign-on physical.

18. Plaintiff's illness was not aggravated by the conduct of the defendant in refusing the plaintiff's demands for transportation.

19. The voyage in question terminated in San Francisco, California, on December 14, 1964.

20. First class air fare from Boston to San Francisco is $175.35.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the subject matter of this action. 46 U.S.C. § 688.

2. Plaintiff did not breach any warranty to the defendant because when plaintiff signed on the vessel he did not intentionally conceal material facts and he believed in good faith that he was reasonably fit for duty. Ahmed v. United States (2d Cir. 1949), 177 F.2d 898; Tawada v. United States (9th Cir. 1947), 162 F.2d 615. An honest though negligent failure to disclose information does not defeat a claim for maintenance. Diaz v. Gulf Oil Corp. (S.D.N.Y. 1965), 237 F.Supp. 261.

3. Plaintiff is entitled to a judgment for maintenance at the rate of $8 per day in the amount of $112 covering the period from November 16, 1964 (the date plaintiff was discharged from the Brighton hospital) to November 30, 1964 (the date plaintiff was marked "fit for duty" by the Staten Island Hospital); for unearned wages at the monthly rate of $413.50 in the amount of $454.85 covering the period from November 11, 1964 (the date plaintiff was hospitalized at Brighton) to December 14, 1964 (termination of voyage), and for transportation from Boston to San Francisco in the amount of $175.35.

4. Plaintiff is not entitled to counsel fees or other damages. Defendant was not callous in its attitude, but rather it did investigate plaintiff's claim. While maintenance has been erroneously withheld, defendant did not act in bad faith, callously or unreasonably. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Diaz v. Gulf Oil Corp., supra.

Submit proposed judgment on notice.