**Marvin HUTTO, Plaintiff,**

v.

**AMERICAN UNION TRANSPORT, INC., Defendants.**

**Civ. No. 105–69–N.**

United States District Court
E. D. Virginia,
Norfolk Division.

Nov. 17, 1969.

---

Charles S. Montagna, Norfolk, Va., for plaintiff.

W. L. Berkley, III, Norfolk, Va., for defendants.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

The dispute in this case arises out of an interpretation of a contract between United States vessel owners on the Atlantic and Gulf Coasts (including the defendant shipowner) and the plaintiff's union, International Organization of Masters, Mates and Pilots, said contract being entitled "Working Codification of Atlantic and Gulf Coast Dry Cargo Agreement 1965–1969."

Plaintiff was employed as the chief mate on the SS TRANSCARIBBEAN for its voyage No. 140. He joined the vessel at Norfolk, Virginia, on June 9, 1967 and the voyage terminated at San Francisco, California, on August 27, 1969. He brings this action for overtime wages, penalties, and damages by way of attorney's fees, the latter being under the doctrine enunciated in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

The normal compliment of the vessel consisted of a chief mate, a second mate, and two third mates. Under such circumstances the chief mate is a non-watchstanding officer with regular hours from 8:00 a. m. to 5:00 p. m., Monday through Friday, while at sea. Stated otherwise, the normal compliment called for the chief mate to be a "day worker."

By reason of the demands occasioned by the Viet Nam war the union could not fill the billet for this particular voyage. The vessel was required to sail short one third mate. This made it incumbent upon the plaintiff to stand regular watches while at sea; these watches being from 4:00 a. m. to 8:00 a. m. and from 4:00 p. m. to 8:00 p. m. Thus, plaintiff reasons, he was entitled to seven hours overtime each day while at sea, these being the hours prior to 8:00 a. m. and subsequent to 5:00 p. m.

Plaintiff concedes that he received earned wages for voyage No. 140 as follows:

| | |
|---|---|
| Base wages | $2219.13 |
| Bonus for war zone (Viet Nam) | 594.69 |
| Non-watch payment | 544.73 |
| Share of missing third mate's wages | 333.28 |
| 497 hours overtime at $4.23 per hour [1] | 2102.31 |
| Total | $5794.14 |

[1] Following the termination of the voyage, 34 hours overtime were paid after plaintiff's union interceded in his behalf. The remaining 463 hours were never in dispute and were paid at the end of the voyage.

Plaintiff claims an additional 216 hours overtime. He admits that the master never ordered the work nor authorized these particular overtime hours or any portion thereof. Section 14(5) states that "overtime or penalty pay is payable *only* when the work done was ordered by the master or, in his absence, by the senior deck officer." The basic question may thus be stated:

"Did the plaintiff retain his status as a day worker, Monday through Friday, while at sea even though required to stand regular watches on the bridge, with the right to overtime pay for said watches on the bridge, *or* did the plaintiff under these circumstances become a watchstanding officer whose overtime pay was governed by the same rules and contract terms as those which govern the pay of the other watchstanding officers?"

We answer the first of the foregoing inquiries in the negative, and the second question in the affirmative.

Section 16(2) (a) of the contract provides that a non-watchstanding officer, when assigned a regular watch, must be paid on the same basis as any watchstander, namely at the overtime rate for all work in excess of eight hours per day *ordered* by the master and for work in excess of 40 hours within the period from Monday through Friday as *ordered* by the master.

█ The interpretation of the contract by the industry, while not binding upon the Court, is entitled to weight. The facts are that plaintiff advanced his argument to the master on July 9, 1967, at which time the master made an entry in the log book to the effect that no overtime was authorized.[2] They agreed, however, that plaintiff would continue his duties and the argument would be resolved at the conclusion of the voyage. Plaintiff's next complaint was to the union patrolman in San Francisco following receipt of his wages. With no support being given to his position, plaintiff next called upon the union's port agent in Norfolk, Captain W. K. Beach. This individual testified that, in his opinion, plaintiff "put his claim down wrong." In Beach's opinion the watches were for base pay and his work as chief mate was overtime. In succession, plaintiff went to the local union's headquarters in Baltimore, the national union's headquarters in New York, and the National Labor Relations Board. The latter declined jurisdiction. All others declined to support the plaintiff's contention.

The contract provides under § 40(1) that disputes of this type be settled by a Licensed Personnel Board composed of union and management representatives. Neither party requested such determination and the union presumably thought that plaintiff's claim was without merit in light of the adverse conclusions reached by the port agent and the local and national bodies. The plaintiff testified that he did not formally request a Licensed Personnel Board because he did not approve of the way Captain Beach operated the union.

Section 16(2) (a) requires the payment to the chief mate of a non-watch-

2. The entry reads: "At sea Mates are ordered not to work any overtime on or off watch unless authorized by the Master or in his absence the Senior Deck Officer —weekend and holiday watches excluded."

A similar entry appears in the log on June 20, 1967. Plaintiff contends that this entry was not made until July 9. The master stated that he made the entry on June 20 because the first assistant engineer was similarly situated with respect to a shortage of personnel in the engine room, and that he advised plaintiff of this dispute, whereupon plaintiff stated that he "was doing the same thing." We do not find it material to resolve this conflict. The master testified that his conversation with plaintiff was on June 19. The master's testimony is inferentially entitled to weight as the payroll record reflects that the first assistant engineer did not claim the balance of his wages at the time of payoff.

standing extra compensation even when he is required to stand watches. On this particular voyage plaintiff received non-watchstanding extra compensation in the sum of $544.73, plus the sum of $333.28 as his share of the missing third mate's wages as required by § 16(2) (b); it being provided that the wages of the missing third mate shall be divided among the officers, including the master.

Reference to the affidavit admitted in evidence by agreement discloses that the major portion of the 216 hours overtime claimed is for hours stood at watch while at sea. The record is vague as to what the plaintiff actually did while not standing watch. The plaintiff and master agree that the master authorized plaintiff to work four hours per day, Monday through Friday, while at sea in order to perform his normal duties as a chief mate which could not be accomplished while standing watch. For this work plaintiff was paid on an overtime basis. A review of the evidence will disclose that this allowance of time and extra compensation was more than sufficient to carry on plaintiff's normal sea duties as chief mate, such as maintenance supervision, completing his payrolls, and making occasional medical log entries. Moreover, we find that the plaintiff did not work (nor was he ordered to work) the 216 overtime hours as claimed. In fact, he worked none of them beyond the four-hour allowance made by the master. It is fundamental, as the master so testified, that the Coast Guard would not approve a watchstander on the 4:00 p. m. to 8:00 p. m. watch who had been on continuous duty, without sleep, since 4:00 a. m.

Plaintiff contends that a similar dispute arose in 1962 and, at that time, defendant paid the overtime. While any such dispute was under a predecessor contract, it is significant to note that Beach's file on the plaintiff contains a copy of a letter dated November 21, 1962, from the secretary of the local union to the defendant stating that plaintiff was claiming ten hours overtime "due to delayed sailings." Obviously this is the 1962 controversy to which plaintiff referred in his testimony, and it is a far cry from the present controversy.

We conclude that the chief mate, ordinarily a day worker, becomes a watchstander while at sea in the absence of one third mate. While the contract requires the shipowner to continue the payment of a non-watchstander's allowance under such circumstances, it also provides that such an individual be paid in the same manner as other watchstanders are paid. The defendant admittedly paid the plaintiff in accordance with this interpretation, and it is significant that the plaintiff agrees that the master never authorized overtime work as provided by § 14(5). To allow this plaintiff's claim would result in the seaman being the judge of what work need be done aboard ship and when the same is to be performed.

A judgment order dismissing the claim and rendering judgment for the defendant, with costs, will be entered upon presentation.