JjH. CHARLES GAUDIN, Judge, Pro Tern.
This is an appeal by a boat captain, Jeffrey Goodwin, from a district court judgment denying his claims under the Jones Act and general Maritime law. Because we find no manifest error, the judgment of the 40th Judicial District Court is affirmed.
On appeal, Goodwin contends:
(1) he proved negligence and unseaworthiness,
(2) the testimony of a witness, Fred Li-ebkemahn, was erroneously accepted by the trial judge,
(3) the testimony of another witness, Buford Weber, should have been excluded, and
(4) he (Goodwin) is entitled to recover for medical bills paid by his own health insurer.
Goodwin was injured on April 6, 1996 when he fell after stepping in diesel fuel on the deck of a barge named Grand View and owned by Weber Marine, Inc. The trial judge allowed maintenance and cure from the time of injury “until such time as Mr. Goodwin reaches maximum medical cure.”
Further, the trial judge stated on March 25,1999:
*1037 “Plaintiff was a boat captain at the time of this accident on April 6, 1996. He has worked consistently in that capacity since on or about June 25, 1996. His entitlement to maintenance payments should be credited against amounts awarded that are the substantial equivalent of maintenance. Therefore, there shall be maintenance reimbursement for the period between June 14, 1996 and June 25, 1996. No evidence was presented as to calculation of maintenance. As long as plaintiff continues to be ^employed as a boat captain, and as long as he has not reached maximum medical recovery, defendant shall be obligated to pay only cure.”
On April 28, 1999, the trial judge rendered a supplemental judgment saying:
“IT IS ORDERED, ADJUDGED AND DECREED that the court’s previous judgment is amended to reflect that maintenance, if any is due, shall be paid at the same rate it was previously paid, $15.00 per day. Defendant shall pay cure in the amount of $11,521.49 or such lesser amount that satisfies the outstanding balance as agreed upon by the health care provider. Cure shall continue until plaintiff reaches maximum medical cure. Interest at the legal rate shall be assessed against amounts paid as cure by plaintiff himself ($1,858.00) and amounts paid by plaintiffs counsel ($2,480.53).”
Testimony at trial showed that Goodwin was assigned to the Reserve location which included a crewboat, the M/V Express, and a landing barge, the Grand View, both owned by Weber Marine. The barge was utilized primarily as an office, storage facility for diesel fuel, a landing from which the M/V Express was boarded, and a fueling station for the MTV Express (as well as other crewboats). The deck of the barge had a gritty surface and was painted with nonskid paint. Goodwin arrived at work at approximately 4:00 p.m. When his shift began at 6:00 p.m., he commenced his usual routine of inspecting the barge. During this inspection, he noticed diesel fuel on the deck of the barge near the fuel storage tank. As he walked towards it for closer investigation, he slipped and fell in diesel fuel. The following morning, he mentioned the accident to his relief person, however, he did not report it to anyone else in the company until approximately two and one-half weeks later, at which time he met with an adjuster and was sent to see the company doctor, claiming injuries to his chest, back and shoulders.
In this lawsuit, Goodwin alleged the negligence of Weber Marine and the unseaworthiness of the landing barge Grand View as a result of the existence of diesel fuel on the deck of the barge creating a slippery condition. He contends |athat the diesel fuel tank was filled to a level which allowed it to spill when the barge rocked due to wake caused by passing vessels. Alternatively, he argues that an employee caused diesel to spill prior to his shift and that due to the lean of the office barge, the diesel fuel ran to an area where appellant was caused to slip and fall.
ASSIGNMENT NO. 1
In an attempt to show negligence of Weber Marine and the unseaworthiness of the vessel, Goodwin testified that for the eight to nine months that he worked for Weber Marine, he noticed that there was a problem with fuel leaking from the top of the diesel tank. He claimed that the fuel would come out when the barge would rock from a passing ferry. He said that he would have to clean up around the tank often because of this problem. Goodwin said he told his supervisor (Bobby Brock) about the problem; however, he claims that there were no changes made to stop the tank from leaking. According to plain *1038 tiff, when diesel or any other liquid would get on the deck of the barge, it would usually go down towards the gangway side because the barge had a lean to it. Goodwin further testified that when he arrived on the barge on April 6, 1996 for his shift, it was not clean and the previous operator had apparently not wiped up the diesel. During the course of his testimony, plaintiff admitted that he did not know how the diesel got on the deck nor did he know how much diesel was in the fuel tank on the day of the incident.
Tony Broussard, also a crewboat operator for Weber Marine around the time of the accident, testified at trial. He said that there were occasions when he cleaned fuel off the deck of the motor vessel Express, although he does not remember ever seeing diesel on the deck of the barge itself. He further testified that he has never seen diesel spill out of the top of the tank as their customary procedure was to leave six to eight inches between the level of fuel and the top of |4the tank. In addition, there were oil pads available for any fuel that spilled out as the boat was being fueled.
Robert (Bobby) Brock, was employed in April of 1996 by Weber Marine as manager of crewboat operations in Reserve. During his testimony, he described the setup of the Reserve operation as well as the fueling process. He testified that when fueling the boat, sometimes the leftover fuel from the hose would spill on the boat; however, if the operator was careful, the boat can be fueled with no spillage of diesel at all. He acknowledged that there was the possibility of spillage from the top of the diesel storage tank located on the barge Grand View if the tank was filled to full capacity. To .prevent spillage, it was their procedure to keep the fuel level nine to ten inches below the full level of the tank. In gauging the ■ amount of fuel, an operator could either use a dip stick or look at the gauge on the fuel flat. It was common knowledge among the operators not to fill the tank. Moreover, it was the duty of the boat operators to keep the barges clean, which duty included cleaning up any fuel if it spilled. • As manager of the Reserve operation in April of 1996, he was not aware of any problem with operators cleaning up the barges. Brock did not have any specific recollection of the condition of the barge on April 6, 1996.
Neil Cheramie was employed by Weber Marine in April 1996 as captain on a crew-boat and was the individual that Goodwin relieved on April 6, 1996. While working for Weber Marine, he never experienced spillage of diesel from the nozzle on the barge. He felt rocking of the barge when vessels would pass as a result of a wake but he never experienced a situation where diesel fuel would have spilled from the top of the tank as a result of a wake caused by passing vessels. While working at Weber, he never observed any spillage of diesel fuel from the top of the tank. It was one of his job functions to clean up the barge. He testified that he would never turn over a barge to his relief with diesel existing on it.
| r,Defense counsel called Frederick Lieb-kemann as an expert witness in mechanical engineering. In connection with this case, he performed tests involving coefficient of friction. He visited the Grand View barge on June 16, 1998 and inspected the exteri- or of the walking surface around the barge including all surfaces around the fuel tank on the barge. Based on his experience as a mechanical engineer and the tests that he did on the barge in June of 1998, Lieb-kemann testified that the grit on the deck of the barge keeps it slip resistant and safe to walk on, even with diesel on it. Assuming the deck of the barge had not been painted since April of 1996, it is his opinion *1039 that the slip resistance in April of 1996 would have been significantly better than when he tested it in 1998. He would expect that the slip resistance would have been better in 1996 when the grit and paint were new. The surface on the deck barge with the nonslip grit provides a good sound walking surface even with diesel on it.
Buford Weber, a maintenance supervisor for Weber Marine, also testified at trial. He reviewed the Custom Fuel records/invoices as well as the trip tickets for Weber Marine. Looking at these records, his testimony indicated that the storage fuel tank would not have contained the amount of diesel fuel necessary for spillage to occur on the date of the accident.
The appropriate standard of review in a Jones Act and unseaworthiness claim is the manifest error or the clearly wrong standard. Foster v. Destin Trading Corp., 700 So.2d 199 (La.1997). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The issue to be resolved by the reviewing court is not whether the fact finder was right or wrong, but whether his conclusion was a reasonable one. Thus, as here, where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
| filt does not appear that the trial court’s factual findings were manifestly erroneous or clearly wrong. Her conclusion that the plaintiff failed to prove the negligence of his employer or the unseaworthiness of the vessel is supported by the record.
ASSIGNMENT NO. 2
In his second assigned error, Goodwin argues that the testimony of Fred Liebkemann was not relevant to the issue of liability and should have been excluded. As noted previously, Liebkemann testified for the defense as an expert in mechanical engineering. In connection with this case, he visited the Grand View barge on June 16, 1998 and inspected the exterior of the walking surface around the barge including all surfaces around the fuel tank on the barge. He testified that the grit on the deck of the barge was slip resistant and was safe to walk on, even with diesel on it.
The trier of fact is not bound by expert testimony, rather, expert testimony must be weighed just as any other evidence. Johnson v. Tregre, 726 So.2d 1105 (La.App. 5 Cir.1999). The trial court can accept or reject the testimony of experts and should evaluate such testimony in the same manner as lay testimony. The trial court is not bound by expert testimony and is vested with broad discretion to determine its effect and weight.
In any event, the complained of testimony was relevant to the issue of liability and was properly admitted by the trial judge.
ASSIGNMENT NO. 3
The defense called Buford Weber, a maintenance supervisor for Weber Marine, to testify in an attempt to establish that the 500 gallon fuel tank could not have been full on April 6, 1996, so as to allow fuel to spill out. Buford testified about the number of trips made by the M/V Express, the amount of fuel burned by the engine on the Express, and the number of times new fuel was brought out to the storage tank aboard the Grand View. Weber identified business records as |7well as other documents and explained to the court how fuel would have been consumed by the MTV Express during the period of time between the loading of the *1040 diesel fuel storage tank on March 31,1996, and the date of plaintiffs accident, April 6, 1996. In connection with this testimony, the Custom Fuel records and the trip tickets were introduced into evidence. Goodwin complains about the admission of this testimony based on its speculative and hearsay nature. He contends that it should not have been allowed or accepted as accurate based on the contradictions throughout the testimony.
Weber’s testimony was based on the fuel records as well as the trip tickets. The trial judge was aware of the basis of Weber’s testimony. Any discrepancies or inconsistencies between the records and Weber’s testimony could have been explored by plaintiffs counsel during cross-examination of this witness. The trial judge did not err in allowing the testimony of this witness.
ASSIGNMENT NO. 4
By judgment dated July 7, 1999, the court amended its previous judgments to reflect that “Weber Marine, Inc.’s obligation to satisfy cure extends solely to those medical expenses that the seaman incurs and pays, not those which a third party health carrier satisfies by payment. The employer, Weber Marine, Inc., is entitled to a setoff for that portion of the group health insurance benefits which were furnished at no expense to Goodwin. Since the vessel owner has no obligation to provide maintenance and cure if it is furnished by others at no expense to the seaman, there is no obligation imposed upon Weber Marine, Inc. to pay medical expenses which were not incurred and paid by the plaintiff, but rather were paid by the group health carrier for Gulf Ship Services, Inc., the plaintiffs subsequent employer.”
Goodwin contends that the trial court erred in denying him recovery for cure on the medical bills paid by his own health insurer.
| sIt is essential for recovery of cure that the injured plaintiff actually incur these expenses. See Brown v. Aggie & Millie, Incorporated, 485 F.2d 1293 (5th Cir.1973), and Davis v. Odeco, Inc., 18 F.3d 1237 (5th Cir.1994).
In Bromi v. Aggie & Millie, supra, the court concluded that a seaman was not entitled to maintenance and cure because he had received care and treatment in a public hospital and thus had incurred no expense. In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the court held that an injured seaman who received care and treatment from his parents was not entitled to maintenance and cure because he had not incurred any actual expense. In O’Bryan v. Folk Const. Co., 594 So.2d 900 (La.App. 4 Cir.1991), the court, on motion for rehearing, held that a seaman incurred no expenses and was not entitled to cure where workers’ compensation carrier paid all medical expenses of seaman. The trial court was correct in her ruling on the amount of cure due.
For these reasons, the main judgment and supplemental judgments are affirmed.
AFFIRMED.